IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARLA CAIN, | : |
| Plaintiff, | : |
| vs. | : |
| | : No. 2:22-cv-00360-CFK |
| CINDY BASS, a Member of Philadelphia City Council, in her personal capacity only, | : |
| and | : |
| CITY OF PHILADELPHIA, | : |
| Defendant. | : |

**Amended Complaint**

Plaintiff Carla Cain files this amended complaint seeking protection of her First Amendment rights of free speech and political association against official retaliation by Defendant Cindy Bass and the City of Philadelphia. Plaintiff specifically asserts her right to serve as a member, leader and primary point of contact of a Registered Community Organization in the 22nd Ward of the City of Philadelphia without retaliatory action by Defendant Bass because of plaintiff's exercise of her rights of free speech and political association. Plaintiff has been unlawfully removed from her position as a member, leader and primary point of contact of the 22nd Ward Democratic Committee RCO. Cain also sues to compel the City of Philadelphia to reinstate her to the positions from which she was removed.

**I.    Parties**

1. Plaintiff Carla Cain is an adult individual residing in the City of Philadelphia.

2. Defendant Cindy Bass is an elected member of the Philadelphia City Council, representing District 8 within the City. Councilmember Bass is sued in her

personal capacity only.

3. Defendant City of Philadelphia is a political subdivision of the Commonwealth of Pennsylvania that maintains a principal office at City Hall, Philadelphia, Pennsylvania 19107.

## II. Jurisdiction and Venue

3. Jurisdiction is founded on 28 U.S.C. §§ 1331 and 1343. This suit is brought under 42 U.S.C. § 1983. Attorneys' fees are authorized by 42 U.S.C. § 1988.

4. Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(b)(1) because Defendant Bass lives in this judicial district and Defendant City of Philadelphia is located in this judicial district.

5. Plaintiff seeks relief that is only equitable in nature.

## III. Facts

6. Cain is a lifelong resident of the City of Philadelphia, an elected local Democratic committeeperson for the 22nd Ward, 25th Division, serving as the First-Vice Chair for the 22nd Ward ("Ward"), and a member of the Pennsylvania Democratic State Committee.

7. Bass holds the elected positions of Democratic Leader in the Ward and Councilperson for the Eighth District of the City of Philadelphia.

8. Cain and Bass are frequent political opponents within the Ward, and Cain frequently speaks out against various political candidates, including Bass.

9. Cain's political opposition has taken the form of 1) Cain voicing her opinion that Bass has violated various rules and by-laws of the Ward's Democratic committee as established by the Democratic Party in the City, 2) Cain attempting to compel Bass to reveal her campaign contributions, 3) Cain questioning Bass's transparency when dealing with other political candidates and organizations, and 4) Cain withholding her support for Bass's candidacy for Ward Leader.

A. **The Role of Registered Community Organizations in Philadelphia Municipal Government**

10. The City of Philadelphia has ordained through the Philadelphia Zoning Code ("Code") the establishment of neighborhood organizations known as registered community organizations ("RCOs," singular "RCO") to serve as interfaces between developers, residents and government agencies in the City of Philadelphia.

11. As defined by the Code, an RCO is an organization that has "adopted a statement of purpose… concerning land use, zoning, or [a] similar object" for a "geographic area of concern" no larger than 20,000 parcels and that conducts publicly advertised meetings on a regular basis.  See generally Code § 14-303(11A)(a)(.1)-(.7).

12. The City's Zoning Board of Adjustment ("Zoning Board") has the power *inter alia* to grant special exceptions and variances from the terms of the Code and to hear appeals from allegedly erroneous enforcement decisions by City zoning and codes personnel.  Code § 14-103(4).

13. The City's Civic Design Review Committee ("Committee") is a special governmental body composed of architects, urban design professionals and community representatives that performs an independent review of large-scale development projects proposed in the City.  Code § 14-304(5)(a)(.2), (b)(.1).

14. Under §§ 14-303(11A) and (12) of the Code, RCOs contribute to the process of building permit review by the Philadelphia Zoning Board of Adjustment and the Civic Design Review Committee.

15. An RCO serves as a liaison between developers proposing new construction in the city and the residents of local neighborhoods, members of political parties, and civic

3

organizations that may be affected by such construction, representing the local population generally, and providing local community input on physical development projects occurring within the affected community.

16. In practice, it is important for a developer to gain the support of all interested RCOs in any physical development project in order to streamline the development approval process with the Philadelphia City Planning Commission ("Commission").

17. There is no limit to the number of RCOs that may be registered in a given ward or geographic area of the City.

18. Presently, there are approximately 260 RCOs serving communities throughout the city.

19. Whenever a developer requests zoning relief such as a special exception or variance, proposes construction that will require review by the Committee, or proposes construction in a Neighborhood Conservation Overlay district, see Code § 14-504, the Philadelphia City Planning Commission is required to notify every RCO "whose registered boundaries include the applicant's property." Code § 14-303(12)(a)-(b).

20. Upon receiving notice, the RCO known as the "Coordinating RCO," after consulting with both the applicant for physical development and other RCOs whose registered geographical boundaries include the property to be developed, is responsible for setting a time, place, date for a public meeting at which the applicant's proposed development can be discussed. Code § 14- 303(12)(e).

21. A Coordinating RCO is either (1) the sole RCO whose registered boundaries include the applicant's property or (2) in the case where an applicant's property is within the registered boundaries of multiple RCOs, the RCO selected by the district councilmember whose district includes the applicant's property. Code § 14-303(12)(b)(2)(a)-(b).

22. After a public meeting is held, the Coordinating RCO is required to prepare a meeting summary form, which is to be made available to the public, documenting any and all actions taken at the meeting and forwarding this summary to the Philadelphia City Planning Commission.  Code § 14-303(12)(e)(4).

23. Illustrating the importance of any RCO's input on the physical development proposed, neither the City's Zoning Board nor Civic Design Review Committee is permitted to issue a decision on a case until either the RCO meeting is held or, despite good faith efforts, such a meeting is not held and the time period allowing for meeting before decision has expired. Code § 14-303(12)(e)(5).

24. An RCO must reapply to the city for recognition every two years after its initial application to remain in active status. Code § 14-303(11A)(d).

25. Nothing in the Code requires a ward leader's approval to establish an RCO.

**B.     Councilmanic Prerogative and Its Role in City Politics**

26. The City of Philadelphia has for decades maintained an official, although unwritten, policy or custom referred to as "councilmanic prerogative."

27. Under councilmanic prerogative, members of City Council defer to councilmembers who represent specific districts on numerous matters concerning zoning, real estate development, and related matters for such districts.

28. Land development essentially cannot be achieved in a given councilperson's district without the local councilperson's approval.

29. The City's Home Rule Charter contains no authority for the exercise of councilmanic prerogative, and neither does the Philadelphia Zoning Code.

30.  Lying at the core of councilmanic prerogative is reciprocity by the council members: customarily, no other member will oppose or interfere with a decision proposed by a

council member for their district, resulting in nearly unfettered land use decision making being vested in the City Councilperson for a particular district.

31. Actions taken pursuant to councilmanic prerogative are taken entirely outside of, and independent from, the parameters of the legislative process and contrary to the lawmaking process as set forth in the City Home Rule Charter and its regulations and ordinances.

32. Often, the utilization of councilmanic prerogative occurs behind the scenes, lending to an undermining of government accountability and transparency and allowing for unilateral and arbitrary decisionmaking.

    C.    **Cain Establishes the 22nd Ward Democratic Committee RCO and Serves as its Leader, but is Ousted at Bass's Unilateral Direction**

33. In June of 2019, Cain established an RCO for the Ward called the 22nd Ward Democratic Committee RCO.

34. At the inaugural meeting of the 22nd Ward Democratic Committee RCO, Cain was elected by the membership to serve as president in addition to serving as the RCO's primary contact. Such information was indicated on the registration information for the 22nd Ward Democratic Committee RCO maintained by the City.

35. Since establishing the 22nd Ward Democratic Committee RCO, Cain has been removed several times from her position as primary contact for the RCO, contrary to city ordinance governing RCOs.

36. The regulations provide that, while an RCO may submit a written request to the Executive Director of the City Planning Commission to update its registration information at any time, such request "must be submitted or verified by the primary contact person as listed on the RCO's current registration unless the primary contact is unavailable." Philadelphia City Planning Commission Reg. 12.3.4.

37. Cain neither submitted nor verified the change to the registration information

establishing the RCO's primary contact as required by Regulation 12.3.4 at any of the several times she was removed.

38. Bass has used the authority of her position as a member of City Council, aided by the official policy or practice of councilmanic prerogative, to bypass the regulations governing the operation of RCOs, in order to appoint her supporters and allies as the primary contact for the 22nd Ward Democratic Committee RCO in lieu of Cain.

39. Cain became aware via an email from the City's RCO Coordinator dated September 21, 2020, that on or about August 13, 2020, an anonymous user had submitted an application to the City Planning Commission to replace Cain as a primary contact for the RCO. See Exhibit A attached hereto.

40. Cain believes that Bass submitted such application, because Bass in her capacity as Ward Leader also took formal action at such time certifying the application removing Cain from her position within the RCO. See Exhibit B attached hereto.

41. Two individuals, Christine Foster and Dominic Mathis, City Democratic committeepersons who are known supporters of Bass, were identified as the new primary contacts for the RCO.

42. Cain, however, had not submitted or verified this change to the RCO's registration information, despite being the sole person with legal authority to do so.

43. The anonymous application and the certification thereof by Bass shows that Bass was involved with the change to the RCO's primary contact information and interfered with Cain's position within the RCO by unilaterally having her removed from her position as primary contact and head thereof with her actions going unquestioned due to the practice of councilmanic prerogative.

44. At some time thereafter, Cain was orally advised by the City Planning Commission that she had been reinstated in title only to her position within the RCO.

45. However, at a later meeting for RCOs held at True Life Church, individuals acting under Bass's supervision refused to give Cain any material which was provided to other RCO members, while the head of the RCOs in the 8th Council District, also allied with Bass's political interests, refused to acknowledge Cain at the meeting as the leader of the 22nd Ward Democratic RCO.

46. On June 3, 2021, Cain successfully renewed the 22nd Ward Democratic RCO. See Exhibit C attached hereto.

47. But, at two different times later, Cain was again advised that she had been removed as the primary contact for the RCO and stripped of any ability to function in her role within the RCO to gather information from developers and provide community input to the Planning Commission.

48. At least one of those times, occurring on October 13, 2021, resulted from Bass submitting a written request to the City's Deputy Director of the Department of Planning & Development, Eleanor Sharpe, requesting that Christine Foster be listed as the primary contact for the 22nd Ward Democratic RCO. See Exhibit D attached hereto.

49. This replacement of Christine Foster as the primary contact rather than Cain was also contrary to the process set forth in City regulations governing the operation of RCOs.

50. Despite the letter being entirely contrary to the process set forth in in the regulations governing RCOs, Bass, aided by her councilmanic prerogative as maintained by the City as an unwritten custom or policy, unilaterally replaced Cain as primary contact for the 22nd Ward Democratic RCO.

51. Consequently, Cain had no ability to communicate with, or receive information from, developers.

52. Cain was entirely deprived of the ability to engage in the process intended for RCOs to be active participants in the land development process.

53. Upon inquiry, a city of employee working within City Planning confirmed that Cain's removal had been done pursuant to Bass's direction.

54. Cain was orally advised that she had been reinstated, but again in December of 2021 she was advised for a third time that she had again been removed from her position within the RCO.

55. As to to the fundamental authority needed even to establish an RCO and appoint its leader, Bass was quoted in early 2021 in at least one press outlet stating, "City rules dictate that if it's a ward RCO, it has to have the consent of the ward leader." See the Chestnut Hill Local article attached hereto as Exhibit E.

56. This statement stands in stark contrast with, and is contradicted by, the City's position as stated by spokesperson Paul Chrysie in the same news article that the RCO application process "does not require a ward leader signature." See Exhibit E.

57. Despite the City's acknowledgment that Cain does not have the power she asserts over the RCO process, it has nevertheless failed to take any action to reinstate Cain to her position within the 22nd Ward Democratic Committee RCO.

58. Such failure is in accordance with the City's unwritten policy and custom to permit members of City Council to wield councilmanic prerogative and unilaterally make decisions regarding land use and related matters within their district.

59. To date, Cain has not participated in any development projects occurring within the geographical boundaries of the 22nd Ward Democratic Committee RCO despite approximately thirty (30) development projects occurring in that area.

60. Such projects include the proposed development of a property located at 361 Hortter Street in Mount Airy, a grocery store which is being targeted for a for a large, multi-story apartment building.

61. Cain's inability to fulfill the responsibilities of her RCO position are the direct

result of Bass's continued and persistent campaign to interfere with and prevent Cain from participating in the RCO process in retaliation for Cain's political speech and associations in opposition to Bass's political positions and endeavors.

62. The City's policy and practice of permitting Cindy Bass through exercise of councilmanic prerogative to exert improper control and authority over RCOs within the 22nd Ward, 9th Councilmanic District have directly prevented Cain from performing her RCO position responsibilities and have interfered with Cain's ability to participate in the RCO process.

**COUNT I**
**(Against Defendant Cindy Bass)**
**Unlawful Retaliation for Cain's Exercise of Her First Amendment Right to Free Speech**
**U.S. Const. amend. I; 42 U.S.C. § 1983**

63. Cain is a lawfully elected city and state Democratic committeeperson entitled to the full exercise of First Amendment rights identical to that of any private citizen.

64. Cain has the right to be free from official retaliation for the exercise of her First Amendment right to free speech and political activity undertaken in opposition to Bass and her political causes.

65. Bass, a public official acting under color of law – albeit without authority – has retaliated against Cain by repeatedly acting (either personally or through agent) to deny her the right to serve as the head of the 22nd Ward Democratic Committee RCO as she is entitled to hold under applicable law.

66. Cain has engaged in free speech activity protected by the First Amendment, namely, advocating for Bass's greater transparency regarding dealings with other political associations, adherence to party rules, making disclosures regarding campaign funds, and running for political office.

67. In response to Cain's exercise of her free speech rights, Bass has engaged in a

series of retaliatory actions against Cain because of her speech and political activities, including repeatedly ousting Cain from her position as the primary contact for the 22nd Ward Democratic Committee RCO and thereby thwarting Cain's ability to carry out the functions of the RCO, such as collecting and providing community input on physical development projects within the geographical boundaries of the are the RCO serves.

68. Bass has used councilmanic prerogative to effectuate such retaliation, and the City has allowed Cain's unlawful removal from serving as president and primary contact person of the RCO.

69. Bass's retaliatory actions were sufficient to interfere with and, at times, wholly impede Cain's ability to perform her duties as president and primary contact of the RCO.

70. Bass's pattern of antagonism aimed at Cain establishes that Bass's actions were undertaken against Cain because of Cain's criticism of Bass for her actions as Ward Leader and City Councilperson.

**WHEREFORE**, Plaintiff Carla Cain prays the Court to:

    a.    PERMANENTLY ENJOIN Bass from engaging in retaliatory activity against her for her exercise of free speech rights protected under the First Amendment and CEASE from unilaterally, unlawfully attempting to remove Cain as president or lead contact person, or otherwise interfering with Cain performing her duties as the head and primary contact person of the 22nd Ward Democratic Committee RCO;

    b.    PERMANENTLY ENJOIN Bass from personally or through agent asserting improper influence on other officials or employees of the City of Philadelphia in order to interfere with, or prevent performance of, Cain's lawful duties as the head and primary contact person of the 22nd Ward Democratic Committee RCO;

    c.    ORDER Bass to take whatsoever corrective action as shall be necessary

and just to undo any actions undertaken to remove Cain from her positions as head and primary contact person of the 22nd Ward Democratic Committee RCO; and

    d.    AWARD attorneys fees to Cain and against Bass pursuant to 42 U.S.C. § 1988, along with costs of suit, and such other relief as is just and equitable.

## COUNT II
### (Against Defendant Cindy Bass)
**Unlawful Retaliation in Violation of Cain's First Amendment Right to Political Association**
**U.S. Const. amend. I; 42 U.S.C. § 1983**

71.    Cain has engaged in associational activity protected by the First Amendment, namely, refusing to lend her support to Bass during Bass's campaign for Ward Leader.

72.    In response to Cain's exercise of her associational rights to withhold support from Bass, Bass engaged in a series of retaliatory actions, aided and unquestioned due to councilmanic prerogative, including repeatedly ousting Cain from her position as the leader and primary contact for the 22nd Ward Democratic Committee RCO, thereby thwarting Cain's ability to carry out the functions of the RCO, such as collecting and providing community input on physical development projects within the geographical boundaries the RCO covers.

73.    Bass's retaliatory actions were sufficient to interfere with and, at times, wholly impede Cain's ability to perform her duties as president and primary contact of the RCO.

**WHEREFORE**, Plaintiff Carla Cain prays the Court to:

    a.    PERMANENTLY ENJOIN Bass from engaging in retaliatory activity against her for her exercise of associational rights protected under the First Amendment and CEASE from unilaterally, unlawfully attempting to remove Cain as president or lead contact person, or otherwise interfering with Cain performing her duties as the head and primary contact person of the 22nd Ward Democratic Committee RCO;

    b.    PERMANENTLY ENJOIN Bass from personally or through agent

asserting improper influence on other officials or employees of the City of Philadelphia in order to interfere with, or prevent performance of, Cain's lawful duties as the head and primary contact person of the 22nd Ward Democratic Committee RCO;

   c. ORDER Bass to take whatsoever corrective action as shall be necessary and just to undo any actions undertaken to remove Cain from her positions as head and primary contact person of the 22nd Ward Democratic Committee RCO; and

   d. AWARD attorneys fees to Cain and against Bass pursuant to 42 U.S.C. § 1988, along with costs of suit, and such other relief as is just and equitable.

## COUNT III
**(Against Defendant City of Philadelphia)**
**Reinstatement to Official Position Following Retaliatory Removal**
**U.S. Const. amends. I, XIV; 42 U.S.C. § 1983**

  74. Cain is entitled to the full exercise of her First Amendment rights, including the right to be free from retaliation for the exercise thereof.

  75. Bass, by virtue of councilmanic prerogative and the supine passivity of the City of Philadelphia, has been able to unilaterally remove Cain from her duly appointed position as president and primary contact of the 22nd Ward Democratic Committee RCO.

  76. Bass's removal of Cain from her position as president and primary contact of the 22nd Ward Democratic Committee RCO was done contrary to the City's regulations governing RCOs consistent with the unwritten practice and policy of councilmanic prerogative which affords councilmembers nearly unfettered discretion to make decisions on land use and related matters within their district which the City has failed to stop.

  77. As a direct result of Bass's actions taken pursuant to the exercise of councilmanic prerogative and as allowed by the supine passivity of the City of Philadelphia, Cain has been deprived of the ability to carry out the functions of the RCO, including collecting

and providing community input on physical development projects within the geographical boundaries the RCO covers.

78. Further, as a direct result of Bass's actions taken pursuant to the exercise of councilmanic prerogative and allowed by the supine passivity of the City of Philadelphia, such actions interfered with and, at times, wholly impede Cain's ability to perform her duties as head and primary contact of the RCO.

79. The City of Philadelphia is required by law to recognize and must reinstate Cain as head and primary contact person for the RCO, and its failure to do so violates Cain's First Amendment rights to free speech and association and her Fourteenth Amendment right to equal protection of laws.

**WHEREFORE**, Plaintiff Carla Cain prays the Court to:

a. PERMANENTLY ENJOIN the City of Philadelphia from removing Cain from her position as head and primary contact person for the 22nd Ward Democratic Committee RCO contrary to City regulations governing occupancy of such positions within the RCO;

b. PERMANENTLY ENJOIN the City of Philadelphia from unlawfully attempting to remove or prevent Cain from performing her duties as a member of the 22nd Ward Democratic Committee RCO, including from attempting through official action or by allowing Bass through councilmanic prerogative to dictate Cain's removal from any leadership positions she may lawfully hold;

c. ORDER the City of Philadelphia to take whatsoever corrective action as shall be necessary and just to undo any actions of Bass undertaken to remove Cain from her positions as head and primary contact person of the 22nd Ward Democratic Committee RCO and reinstate Cain to such positions; and

   d. AWARD attorneys fees to Cain and against the City of Philadelphia pursuant to 42 U.S.C. § 1988, costs of suit, and such other relief as is just and equitable.

              Respectfully submitted,

              **METTE, EVANS & WOODSIDE**

Dated: March 31, 2022    By: _____
              Aaron D. Martin
              Pa. Atty. I.D. 76441
              3401 North Front Street
              Harrisburg, PA 17110
              Phone: 717-232-5000
              admartin@mette.com

              **Law Offices of John S. Carnes, Jr.**

Dated: March 31, 2022    By: /s/ John S. Carnes, Jr.
              John S. Carnes, Jr.
              Pa. Atty. I.D. 47338
              101 Main Street
              Parkesburg, PA 19365
              Phone: (610) 857-5500
              jscarnes@jcatty.com

              *Attorneys for Plaintiff,*
              *Carla Cain*