IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARLA CAIN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| CINDY BASS, a Member of | : | No. 2:22-cv-00360-CFK |
| Philadelphia City Council, | : | |
| in her personal capacity only, | : | |
| | : | |
| and | : | |
| | : | |
| CITY OF PHILADELPHIA, | : | |
| | : | |
| Defendants. | : | |

**Plaintiff Carla Cain's Brief in Opposition to Defendant's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)**

Plaintiff Carla Cain by undersigned counsel files this brief in opposition to defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b0(6).

**I.     Background**

Plaintiff Carla Cain ("Cain") is a lifelong resident of the City of Philadelphia who serves as an elected Democratic committeeperson for the 22nd Ward, 25th Division, of the City.  Cain also serves as the First-Vice Chair for the 22nd Ward ("Ward").  Defendant Cindy Bass ("Bass") holds the elected positions of Democratic Leader in the Ward and Councilperson for the Eighth District of the City of Philadelphia.  Cain has frequently publicly vocalized her political opposition to Bass and has associated politically contrary to Bass's political interests.

Defendant City of Philadelphia ("City") has adopted ordinances providing for the establishment of "registered community organizations" (hereinafter "RCOs") – quasi-governmental entities vested with special prerogatives in the land use review process in the City.

RCOs serve as an interface between developers, residents, and government agencies in the City. The City's Zoning Code ("Code") defines an RCO as an organization that has "adopted a statement of purpose… concerning land use, zoning, or [a] similar object" for a "geographic area of concern" no larger than 20,000 parcels and hat conducts publicly advertised meetings on a regular basis. See generally Philadelphia Code § 14-303(11A)(a)(.1)-(.7).

Under §§ 14-303(11A) and (12) of the Code, RCOs contribute to the process of building permit review by the Philadelphia Zoning Board of Adjustment and the Civic Design Review Committee. There is no limit to the number of RCOs that may be registered in a given ward or area of the City. Currently, approximately 260 RCOs are registered in Philadelphia City and serve the community throughout. Nothing in the Code requires a ward leader's approval to establish an RCO or vests authority in a ward leader over any given RCO.

In June of 2019, Cain established a registered community organization for the Ward called the 22nd Ward Democratic Committee RCO ("RCO"). Cain was elected as the president of the RCO by the membership and began serving as the RCO's primary contact. Since becoming the primary contact person/president in June of 2019, Bass has effectuated Cain's removal from the position of primary contact/president of the RCO several times. Each time Cain was removed, the procedure governing RCOs through city ordinance was ignored. Once after Cain was removed, two supporters of Defendant Bass were identified as the new primary contacts for the RCO. Bass undertook action to remove Cain in retaliation for Cain's exercise of her First Amendment rights to speech and association.

Bass by virtue of a custom or usage of the City known as "councilmanic prerogative" was able to bypass the regulations governing the operation of RCOs in order to remove Cain appoint her supporters and allies as the primary contact for the 22nd Ward Democratic Committee RCO,

as an act of political retaliation. Although one application for Cain's removal was made anonymously, it was received at the same time Bass took formal action certifying the application removing Cain from her position with the RCO. In doing this, Bass interfered with Cain's position by unilaterally having her removed from her position as primary contact/president. As a City Council member, Bass' actions went unchecked and bypassed all proper procedure for removal as outlined in the Code.

On October 13, 2021, Bass submitted a written request to the City's Deputy Director of the Department of Planning and Development, Eleanor Sharpe, requesting again that a supporter, Christine Foster, be listed as the primary contact for the 22nd Ward Democratic RCO. Although the letter again did not follow proper procedure, it resulted in Cain being replaced yet again as the primary contact for the RCO.

Bass's repeated oustings of Cain for her exercise of protected First Amendment activities have resulted in Cain's inability to participate in important development projects occurring within the 22nd Ward Democratic Committee RCO. Cain's inability to perform her functions as primary contact/president of the RCO is the direct result of Bass's actions. The City's policy and practice of permitting councilpersons such as Bass to act in such a unilateral manner without any checks on the use of executive power in land use matters led to Cain's removal. The City opposes the present suit in which Cain seeks an order of reinstatement to the position she rightfully holds under the City's ordinances.

## II. Question Presented

Whether the Court should deny the defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

### III. Legal Argument

*Standard of Review*

A motion to dismiss under Rule 12(b)(6) should be analyzed by: 1) taking note of the elements a plaintiff must plead to state a claim, 2) identifying allegations that are not entitled to the assumption of truth because those allegations are no more than mere conclusions, and 3) when there are well-pleaded factual allegations, assuming their veracity in addition to assuming the veracity of all reasonable inferences that can be drawn from those allegations and, construing the allegations and reasonable inferences in the light most favorable to the plaintiff, determining whether they plausibly give rise to an entitlement to relief. *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021).

Here, defendants primarily contest whether a) Cain has challenged action taken under color of law, and b) the position of RCO primary contact/president is political in nature and beyond the scope of review for violation of constitutional rights under Section 1983. The arguments are somewhat melded in defendant's brief. The present brief therefore addresses defendants' objections holistically.

### A. Cain Seeks Vindication of Her Right to Hold Public Office, Not a Political Position

As stated in the amended complaint, registered community organizations ("RCOs") are created pursuant to the ordinances of Defendant City of Philadelphia. Am. Compl. ¶¶ 10-11. The City's ordinances govern the creation and continuation of RCOs, and nowhere under the City's ordinances is any RCO made subject to the authority of a political ward leader. See generally Am. Compl. ¶¶ 14-25. This is, in fact, the publicly stated position of the City itself. See Am. Compl. Exhibit E (article in Chestnut Hill Local, 2/1/2022) ("'The RC application process does not require a ward leader signature,' said city spokesperson Paul Chrystie in an

email to the [Chestnut Hill] Local."). Bass, however, disputes this proposition. *See id.* ("'City rules dictate that if it's a ward RCO, it has to have the consent of the ward leader,' Bass said.").

This divergence between the defendants' positions on the material question of whether an RCO can be subject to the control of a political ward leader is in itself striking. "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013), *as amended* (June 14, 2013) (quoting *Warren Gen. Hosp. v. Amgen Inc.,* 643 F.3d 77, 84 (3d Cir. 2011)). Here, one defendant itself – the City – *agrees* with Cain that Bass has no authority over the 22nd Ward Democratic RCO. Bass accordingly was not authorized to remove Cain from her position as primary contact/president. Yet, the City acquiesced in Bass's action anyway and somehow is not bothered by Cain's unconstitutional deposition from office, despite the fact that nothing in the City's ordinances places an RCO under the control of a local political boss. How this could happen and such cognitive dissonance tolerated by the city is explained by the City's longstanding custom of councilmanic prerogative, explicated *infra*.

### B. The Elements of a First Amendment Retaliation Claim

In order to state a § 1983 claim for retaliation in violation of the First Amendment, a plaintiff must show "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.,* 463 F.3d 285, 296 (3d Cir.2006). "[T]he key question in determining whether a cognizable First Amendment claim has been stated is whether 'the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First

Amendment rights.'" *McKee v. Hart,* 436 F.3d 165, 170 (3d Cir. 2006) (quoting *Suppan v. Dadonna,* 203 F.3d 228, 235 (3d Cir. 2000)); citing *Crawford–El v. Britton,* 523 U.S. 574, 589 n. 10 (1998) ("The reason why such retaliation offends the Constitution is that it threatens to inhibit exercise of the protected right."); see also *Croft v. Donegal Twp.,* 2021 WL 1146285, *5 (W. D. Pa. March 25, 2021) (retaliatory act preventing official from taking office or speaking once in office actionable under Section 1983) (citing *Bond*, *Montiero, supra*).

While it is true that "elected officials who are retaliated against by their peers have limited recourse under the First Amendment when the actions taken against them do not interfere with their ability to perform their elected duties[,]" *Werkheiser v. Pocono Twp.,* 780 F.3d 172, 183 (3d Cir. 2015) (citations omitted), such is not the case in the matter *sub judice*. Here, Bass caused Cain to be removed from office and *wholly prevented* Cain from performing the duties for which she was instituted to perform. See Am. Compl. ¶¶ 45, 50-52, 59-62, 69, 72 (detailing Cain's inability to act in role as primary contact/president of RCO because of Bass's actions).

Because Cain's removal from office resulted from actions Defendant Bass undertook by virtue of her authority as a member of City Council, see Am. Compl. ¶¶ 38, 65-69, Cain has challenged such actions as contrary to her First Amendment rights to free political speech and association. Broadly speaking, an elected official's speech is protected by the First Amendment. *Bond v. Floyd,* 385 U.S. 116 (1966) (state legislature's refusal to seat elected representative in retaliation for statements opposing the war in Vietnam violated the First Amendment); see also *Montiero v. City of Elizabeth*, 436 F.3d 397, 404 (3d Cir. 2006) ("It is clearly established that when a public official excludes a[n] elected representative or a citizen from a public meeting, she must conform her conduct to the requirements of the First Amendment.").

While it is true that Bass also holds the political position of Democratic ward leader, her tenure in such position does not mean that Bass, an elected member of City Council, is exempt from scrutiny for state action within the meaning of Section 1983. Here, in fact, is where councilmanic prerogative assists in understanding the dynamic of the situation as pled in the amended complaint: although the City's ordinances do not allow a ward leader to remove the head of an RCO, Bass was able to do so anyway because of the custom prevailing in the city recognizing councilmanic prerogative on issues of zoning and land use. *Cf.* 42 U.S.C. § 1983 (scope of actionable conduct broadly including "statute, ordinance, regulation, *custom*, or *usage*") (italics added).

### C. Bass's Actions as Councilperson Were Effectuated by Councilmanic Prerogative

Although there is no "simple line" between state and private actors, "[t]he principal question at stake is whether there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (quoting *Leshko*, 423 F.3d 337, 339 (3d Cir. 2005)) (internal quotation marks and citation omitted).

The Third Circuit has outlined "three broad tests" generated by Supreme Court jurisprudence to determine whether state action exists: (1) "whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state"; (2) "whether the private party has acted with the help of or in concert with state officials"; and (3) whether "the [s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Id.* (quoting *Mark,* 51 F.3d at 1142 (other alterations, internal quotation marks and citations omitted). Accord *Borrell v. Bloomsburg Univ.*, 870 F.3d 154, 160 (3d Cir. 2017). Under any test, the inquiry is fact-specific.

*Id.* (citing *Groman v. Twp. of Manalapan,* 47 F.3d 628, 638 (3d Cir. 1995); *Crissman v. Dover Downs Entm't Inc.,* 289 F.3d 231, 234 (3d Cir. 2002) (en banc) (noting that "the facts are crucial")).

Here, Bass actually occupies the position of councilperson for Defendant City of Philadelphia. Her occupancy of such position in addition to her position as Democratic ward leader cannot be ignored. As stated in the amended complaint,

> Bass has used the authority of her position as a member of City Council, aided by the official policy or practice of councilmanic prerogative, to bypass the regulations governing the operation of RCOs, in order to appoint her supporters and allies as the primary contact for the 22nd Ward Democratic Committee RCO in lieu of Cain.

Am. Compl. ¶ 38.

Councilmanic prerogative as practiced in the City of Philadelphia is so well known and so widely practiced that it was the subject of a study by the Pugh Charitable Trusts in 2015. *See* https://www.pewtrusts.org/-/media/assets/2015/08/philadelphia-councilmanic-report--with-disclaimer.pdf (last accessed 5/16/2022); *see also* Am. Compl. ¶¶ 26-32. And councilmanic prerogative was used against Cain when Bass issued a directive to replace Cain as the main contact person for the RCO – the very RCO that Cain had herself started. Am. Compl. ¶ 33. Cain was replaced with Bass's own political supporters. *Id.* at ¶ 41.

Cain later successfully renewed the RCO's registration and was again named the primary contact person/president, *id.* at ¶ 46, but Bass yet again removed and disempowered Cain from acting in such role. *Id.* at ¶¶ 47-48. Exhibit D. Bass undertook such action in retaliation for Cain's political speech and associational activities, *id.* at ¶¶ 71-79, wielding councilmanic prerogative to effectuate an executive removal of Cain at the City level contrary even to the provisions of the City's ordinances as written. This was also contrary to the City's own

professed interpretation of the ordinances governing RCOs.  Exhibit E.  Bass thus acted under color of law.  The City – which can only ever undertake action that is not "state action" due to its existence as a unit of government *in qua* – is also unquestionably a state actor and at all times acted under color of law.  Accordingly, both defendants are susceptible to Cain's respective claims in the amended complaint: a request to order the City to restore Cain to her rightful position and a request to enjoin further retaliatory action by Bass that might lead to Cain's removal from her restored position in violation of her First Amendment rights.

> **D.  Legal Authority Cited by Defendants Inapposite to Right to Hold Public Office Without Political Retaliation**

As to the case law cited by defendants, Cain does not dispute defendants' contention that political leaders, such as ward leaders, are not in and of themselves state actors for purposes of Section 1983.  That is the gist of the authority that defendants repeatedly cite.  But Bass's actions as pled in the amended complaint – though politically motivated – were nonetheless effectuated *by her authority as a councilperson pursuant to councilmanic prerogative* and constituted an exercise of power under color of law such that they constitute actionable conduct under Section 1983.

Yes, Bass acted as a political opponent to Cain and with political motivation when she removed Cain.  But Bass also acted with an authority not vested in her under City ordinance but in which the City nevertheless acquiesced such that Cain was stripped of the position that she by right held under the City's ordinances.  There is at a minimum a nexus between these two roles in Bass's actions.  An action seeking to enjoin further use of color of law by this member of City Council to prevent further impairment of Bass's right to hold office is therefore appropriate, as the right to hold office cannot be denied for reasons of political retaliatory animus effectuated through a governmental official.

Cain underscores that she is *not* in this lawsuit seeking an injunction to oust Bass as Ward leader, nor is she trying to protect her own position within the Democratic Party. Cain is seeking an injunction to prevent Bass from again misusing her power as a city councilperson to remove Cain as the head of the RCO at issue. The RCO is not a political organization, but rather a quasi-governmental entity because of the unique prerogative it has to participate in the City's land use and planning processes. See, e.g., Am. Compl. ¶¶ 19-23 (detailing unique position and prerogatives of RCOs in City's consideration of land use applications). Under the City's ordinances, Cain had the right to hold the position of primary contact/president without retaliation by Bass for Cain's exercise of First Amendment rights.

Bass has tendered no actual legal authority to support her apparent contention that she has authority to remove the primary contact person and president of an RCO, despite her public claim to have authority over a ward RCO. Given Bass's actions to remove Cain without authority under the governing ordinance, Cain is entitled to seek reinstatement by the City and to restrain further retaliatory action by Cain to remove her, given that Cain has been at least twice removed by Bass's actions, if not three times. Am. Comp. ¶¶ 35, 39, 45, 47.

## IV. Conclusion

WHEREFORE, Plaintiff Carla Cain requests the Court to DENY defendants' motion to dismiss.

                                                              Respectfully submitted,

**METTE, EVANS & WOODSIDE**

Dated: May 16, 2022        By: _____
                                                      Aaron D. Martin
                                                      Pa. Atty. I.D. 76441
                                                      3401 North Front Street
                                                      Harrisburg, PA 17110
                                                      Phone: 717-232-5000
                                                      admartin@mette.com

**Law Offices of John S. Carnes, Jr.**

Dated: May 16, 2022        By:   /s/ John S. Carnes, Jr.
                                                        John S. Carnes, Jr.
                                                       Pa. Atty. I.D. 47338
                                                       101 Main Street
                                                       Parkesburg, PA 19365
                                                       Phone: (610) 857-5500
                                                       jscarnes@jcatty.com

                                                      *Attorneys for Plaintiff,*
                                                      *Carla Cain*