# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARLA CAIN, | : |
| Plaintiff, | : |
| v. | : CIVIL ACTION |
| | : No. 2:22-cv-360-CFK |
| CINDY BASS | : |
| and | : |
| CITY OF PHILADELPHIA, | : |
| Defendants. | : |

## JOINT UNDISPUTED FACTS OF THE PARTIES WITH JOINT EXHIBIT LIST

1. Carla Cain ("Cain") is an adult individual residing in the City of Philadelphia.

2. Cain is a lifelong resident of the City of Philadelphia, an elected local Democratic committeeperson for the 22nd Ward, 25th Division, serving as the First-Vice Chair for the 22nd Ward ("Ward"), and a member of the Pennsylvania Democratic State Committee.

3. Cindy Bass ("Bass") is Councilperson for the Eighth District of the City of Philadelphia and is both an elected committeeperson to the 22nd Democratic Ward Committee and serves as Ward Leader by election of the committeepersons.

4. Bass and Cain are frequent political opponents within the Ward, and Cain frequently speaks out against various political candidates, including Bass.

5. Cain's political opposition has taken the form of 1) voicing Cain's opinion that Bass has violated various rules and by-laws of the Ward's Democratic committee as established by the Democratic Party in the City, 2) attempting to compel Bass to reveal her campaign

contributions, 3) questioning Bass's transparency when dealing with other political candidates and organizations, and 4) withholding Cain's support for Bass's candidacy for Ward Leader.

6. Presently, there are approximately 260 RCOs serving communities throughout the city.

7. In June of 2019 the City maintained a "Registered Community Organization Application: 2019." See Joint Exhibit 1.

8. Also in June of 2019, Carla Cain submitted an "RCO 2019 Application" for a Registered Community Organization (the "RCO"). See Joint Exhibit 2.

9. On or about August 13, 2020, Christine Foster submitted an application to become primary contact person for the RCO and named Dominic Mathis as additional contact person. See Joint Exhibit 3.

10. In June of 2021 the City maintained an electronic form by which an application to renew an RCO registration could be submitted. See Joint Exhibit 4.

11. On June 3, 2021, Cain renewed the 22nd Ward Democratic RCO. See Joint Exhibit 5.

12. On October 13, 2021, Bass submitted a written request to the City's Deputy Director of the Department of Planning & Development, Eleanor Sharpe, requesting that Christine Foster be listed as the primary contact for the "22nd Ward Democratic Committee" RCO. See Joint Exhibit 6.

13. Between Sept. 16, 2019, and Oct. 13, 2021, Ms. Bass made multiple communications to the City Planning Commission requesting that Ms. Cain be removed as primary contact of the RCO, including by communications made through Bass's council staff members, Christian Matozzo and Charles L. Richardson.

14. Sometime between September 27, 2021, and November 3, 2021, at Bass's request, Jonathan Goins, RCO Coordinator for the City Planning Commission, replaced Cain on the City Planning Commission's primary contact list with Christine Foster as the primary contact for the RCO. See Joint Exhibit 7.

15. The City ordinance governing registered community organizations has been the same at all times relevant hereto. See Joint Exhibit 8.

16. Regulations of the City Planning Commission have been amended over the past few years, and include three versions effective June 27, 2016, November 18, 2019, and November 22, 2021. See Joint Exhibits 9, 10 and 11.

17. Interrogatory 5 as propounded to, and answered by, Cain states the following,

> Interrogatory: "Describe with specificity how You came to 'establish an RCO for the Ward called the 22nd Ward Democratic Committee RCO,' as alleged at paragraph 33 of Your Amended Complaint, including when and by what means the 22nd Ward Democratic Committee authorized You to 'establish an RCO, or by what authority You purported to 'establish an RCO for the 22nd Ward Democratic Committee.'"
>
> Response: "The 22nd Ward Democratic Committee ("Committee") never authorized me to form the RCO. Rather, I took the initiative to register an RCO by such name. Following creation, I was appointed president of the RCO by its board."

18. Interrogatory 7 as propounded to, and answered by, Cain states the following,

> Interrogatory: "Describe with specificity how the '22nd Ward Democratic Committee RCO' exists as a separate entity from the 22nd Ward Democratic Committee, including its legal form, including any documents of incorporation, its bylaws, rules, regulations, publications, list of members and whether membership, headquarters, location of meetings, and any other documents or information set it apart from the 22nd Ward Democratic Committee."
>
> Response: "The RCO has not been incorporated, but rather is an unincorporated association. There are not written bylaws, rules, regulations, publications other than notices of meetings produced

contemporaneously in response to Defendant Bass's requests for production of documents. There is no fixed independent headquarters. Numerous scheduled meetings could not be held due to COVID restrictions and conditions. Some meetings were held, however, at Mt. Airy Nexus, 520 Carpenter Lane, Philadelphia."

19. In response to various requests for admission, Cain responded as follows:

11. Carla Cain was not elected at a meeting of the 22nd Ward Democratic Committee to serve as president of the 22nd Ward Democratic Committee RCO.

**Response**: Admitted.

12. Carla Cain was not elected at a scheduled election of the 22nd Ward Democratic Committee to serve as president of the 22nd Ward Democratic Committee RCO.

**Response**: Admitted.

16. Carla Cain was not elected at a scheduled election of the 22nd Ward Democratic Committee to serve as primary contact for the 22nd Ward Democratic Committee RCO.

**Response**: Admitted.

19. There is no limit to the number of registered community organizations that may be registered in a given ward or geographic area of the City of Philadelphia.

**Response**: Admitted.

20. East Mt. Airy Neighbors and Cliveden Hills Association are existing Registered Community Organizations that are active in the 22nd Ward of Philadelphia.

**Response**: Admitted.

22. Carla Cain is not prevented from attending meetings of East Mt. Airy Neighbors.

**Response**: Admitted.

24. Philadelphia Code § 14-303(11A) provides that the City Planning Commission may register as a Registered Community Organization (a) volunteer organizations, (b) Pennsylvania nonprofit corporations, (c) unincorporated associations, and (d) Pennsylvania municipal authorities that either serve as a Neighborhood Improvement District Management Association or are themselves a Special Services District.

**Response**: Admitted. Philadelphia Code § 14-303(11A) states in its entirety the following,

**(11A) Registered Community Organizations.**

An organization that seeks recognition as a Registered Community Organization ("RCO") for purposes of § 14-303(12) ("Neighborhood Notice and Meetings") must first register with the Commission in accordance with the provisions of this § 14-303(11A).

(a) The Commission will only register an organization as an RCO if the organization:

(.1) Is a volunteer organization, a Pennsylvania nonprofit corporation, an unincorporated association, a Pennsylvania municipal authority that either serves as a Neighborhood Improvement District Management Association or is itself a Special Services District, or a political committee that represents the members of a political party within a ward (such Pennsylvania municipal authorities are not required to satisfy any additional requirements set forth in subsections (.2) through (.7) of this subsection (a); and such ward political committees are not required to satisfy the requirements set forth in subsections (.2), (.3) or (.7), and must only satisfy the requirements of subsections (.4), (.5) and (.6) with respect to meetings relating to zoning matters);

(.2) Has adopted a statement of purpose for the organization concerning land use, zoning, or similar subject;

(.3) Has a geographic area of concern that encompasses no more than twenty-thousand (20,000) parcels, except that parcels under the jurisdiction of DPR shall not be counted as parcels for the purposes of this subsection;

(.4) Has registered boundaries that are consistent with the geographic boundaries set forth in the organization's governing rules;

(.5) Conducts open meetings on a regularly scheduled basis;

(.6) Publicly announces its meetings through media such as flyers, newsletters, newspaper notice, or electronic or social media; and

(.7) An organizational membership open to residents, property owners, business owners or operators, and/or tenants from the organization's geographic area of concern, which elects leadership on a routinely scheduled basis.

(b) An organization shall file a registration request with the Commission on a form provided by the Commission, which shall include the following:

(.1) The organization's official name and address;

(.2) The name of a contact person;

(.3) The name of a person designated to participate in the Civic Design Review process, if applicable;

(.4) The boundaries of the organization's geographic area of concern. The boundaries of a municipal authority that serves as a Neighborhood Improvement District Management Association shall be considered to be the boundaries of the Neighborhood Improvement District; the boundaries of a municipal authority that is itself a Special Services District shall be considered to be the boundaries of the Special Services District; and the boundaries of a ward political committee shall be considered to be the boundaries of the ward;

(.5) Whether the organization wishes to be notified of applications in its geographic area of concern electronically or by mail;

(.6) The address of the location at which the organization routinely conducts meetings, provided that if the organization does not have a location at which it routinely conducts meetings, the organization shall indicate that meetings are not held at a routine location within the boundaries of the organization's geographic area of concern; and

(.7) Such other information as may be required by the regulations of the Commission.

(c) After review of a registration request form, the Commission shall register an organization as an RCO if it finds that the organization meets the requirements of subsection (a). The Commission shall notify an organization whether its registration request has been granted. If the organization's request has been denied, the Commission must clearly state, in written form, the reason for such denial. The denial of an application shall not preclude an organization from reapplying during the next or any subsequent registration period.

(d) The registration of an organization as an RCO shall remain valid for two years. An RCO may re- register with the Commission for additional two year periods, on reregistration forms provided by the Commission.

(e) An RCO must promptly inform the Commission of any changes to the information provided on a registration or re-registration request form.

(f) Once an organization has been registered by the Commission as a Registered Community Organization, The Director of Finance is authorized to provide funding to help offset the cost of Directors and Officers Insurance premiums attributable to the threat of Strategic Lawsuits Against Public Participation (SLAPPs) for qualified Registered Community Organizations. The Director of Finance shall submit a report to the Council President and the Chief Clerk of City Council concerning the distribution of any such funds over the course of the previous fiscal year at the time of the annual submission of the proposed operating budget to the Council.

(g) **Regulations.**

The Commission is authorized to promulgate regulations to implement the provisions of this subsection (11A). These regulations may include guidelines concerning operations by Registered Community Organizations that constitute an RCO Code of Conduct; and may include guidelines concerning the disbursement of supporting funds towards the costs of Directors and Officers Insurance premiums. Failure to operate within these guidelines may result in the temporary or permanent suspension of organizations from the RCO registry, as outlined by the regulations of the Commission.

25. Philadelphia Code § 14-203(11A) permits Carla Cain to organize and register with the Philadelphia City Planning Commission a Registered Community Organization that meets the requirements of Philadelphia Code § 14-303(11A)(a.1) on behalf of a volunteer organization, a Pennsylvania nonprofit corporation or unincorporated association.

**Response**: Admitted.

26. A volunteer organization, Pennsylvania nonprofit corporation or unincorporated association seeking to register as a Registered Community Organization must comply with all of the subparts of Philadelphia Code § 14-303(11A)(a.1-7).

**Response**: Admitted.

31. Cindy Bass did not attend the meeting at True Life Church alleged in paragraph 45 of the amended complaint.

**Response**: Plaintiff believes this statement to be true and accordingly admits the same while stating that discovery is ongoing and plaintiff reserves the right to amend her response should discovery uncover a contrary truth.

32. Cindy Bass did not organize the meeting at True Life Church alleged in paragraph 45 of the amended complaint.

**Response**: Plaintiff has no knowledge to admit or deny this statement and accordingly must deny the same while stating that discovery is ongoing and plaintiff reserves the right to amend her response should discovery uncover a contrary truth.

33. The meeting at True Life Church alleged in paragraph 45 of the amended complaint was not a meeting of the 22$_{nd}$ Ward Democratic Committee or of the 22nd Ward Democratic Committee RCO.

**Response**: Admitted.

34. The meeting at True Life Church alleged in paragraph 45 of the amended complaint was not organized or sponsored by the 22$_{nd}$ Ward Democratic Committee or the 22nd Ward Democratic Committee RCO.

**Response**: Admitted.

## JOINT EXHIBIT LIST

| No. | Description |
| --- | --- |
| 1. | RCO application form (2019) |
| 2. | Cain RCO application (2019) |
| 3. | Christine Foster RCO application (2020) |
| 4. | RCO renewal form (2021) |
| 5. | Cain RCO renewal application (2021) |

6. Bass request to change primary contact person for RCO (2021)

7. City spreadsheet of recognized primary contacts for RCOs (2021)

8. City RCO Ordinance

9. Planning Commission Regulations re: RCOs (Effective: 6/27/2016)

10. Planning Commission Regulations re: RCOs (Effective: 11/18/2019)

11. Planning Commission Regulations re: RCOs (Effective: 11/22/2021)

12. City Discovery Documents Nos. 1-123 (collectively)

13. Bass Discovery Documents No. 1-23 (collectively)

## CITY WITNESS LIST

- Carla Cain (<30 mins. est.)

- Jonathan Goins (20 mins. est.)

## CAIN WITNESS LIST

- Carla Cain (45 mins. est.)

- Cindy Bass (45 mins. est.)

- Jonathan Goins (30 mins. est.)

- Eleanor Sharpe (15 mins. est.)

- Jeanine Allen-Bowens (15 mins. est.)

- Christine Foster[1] (15 mins. est.)

- Dominic Mathis[2] (15 mins. est.)

---

[1] Not previously deposed by plaintiff, *but see* ECF Doc. #19 ("Parties will not waive their right to re-depose witnesses or call them for the first time if not deposed for the preliminary injunction hearing."). *Contra* ECF Doc. #29, ¶4 ("[A]ll witnesses listed must have been identified and deposed prior to the preliminary injunction hearing.").

[2] Not previously deposed by plaintiff, *but see* ECF Doc. #19 ("Parties will not waive their right to re-depose witnesses or call them for the first time if not deposed for the preliminary

## BASS WITNESS LIST

- Cindy Bass (30 mins. est.)

- Jonathan Goins (30 mins. est.)

- Carla Cain (30 mins. est.)

---

injunction hearing."). *Contra* ECF Doc. #29, ¶4 ("[A]ll witnesses listed must have been identified and deposed prior to the preliminary injunction hearing.").