IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| CARLA CAIN, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| CINDY BASS, a Member of Philadelphia City | : CIVIL ACTION |
| Council, in her personal capacity only, | : |
| | : No. 2:22-cv-00360 |
| and | : |
| | : |
| CITY OF PHILADELPHIA, | : |
| | : |
| Defendants. | : |
| | : |

**DEFENDANTS CINDY BASS'S AND THE CITY
OF PHILADELPHIA'S MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ..................................................................................................... 2

ARGUMENT .......................................................................................................... 6

   I.    PLAINTIFF IS UNLIKELY TO SUCCEED ON THE MERITS. ................................. 7

      A.   Plaintiff Has Failed to Establish a Constitutionally Protected Interest. ........................ 7

          1.    Plaintiff is not likely to succeed on a claim for violation of her First Amendment rights. ................................................................................ 7

          2.    Plaintiff is not likely to succeed on a claim for violation of due process. ................. 8

      B.   Even if Plaintiff Established an Interest Protected by the Fourteenth Amendment, She Received All the Process She Was Due. ......................................... 12

      C.   Plaintiff Cannot Establish State Action. ...................................................... 14

      D.   Plaintiff Cannot Demonstrate That Any Constitutional Violation on the Part of the City was Caused by its Policies or Customs, as Required for *Monell* Liability. ..................................................................................................... 16

   II.   PLAINTIFF HAS NOT DEMONSTRATED THAT SHE WILL SUFFER IRREPERABLE HARM ABSENT RELIEF. ................................................................ 18

   III.   THE BALANCE OF THE HARMS AND THE PUBLIC INTEREST FAVOR DENIAL OF THE REQUESTED INJUNCTION. ....................................................... 20

CONCLUSION ...................................................................................................... 22

Defendants Cindy Bass and the City of Philadelphia submit this memorandum of law in opposition to Plaintiff Carla Cain's Motion for Preliminary Injunction, which seeks an order directing Plaintiff's reinstatement to a position of which she had no entitlement to hold in the first instance. Even if the Court determines that the organization consented to Plaintiff's registration of it as an RCO, the organization maintained the absolute right to establish its primary contact for RCO purposes. And that dispute—which has a clear answer—is the only underlying issue here. Ms. Cain's dispute is not really with the City. The City merely effectuated a change requested by the organization. Rather, Ms. Cain disagrees with the decision of the organization. That disagreement provides no basis for the relief Plaintiff has requested, which is improper as a matter of law and must be denied in its entirety.

## PRELIMINARY STATEMENT

Through this litigation and her Preliminary Injunction Motion, Plaintiff seeks reinstatement as "primary contact person" for the 22nd Ward Democratic Committee RCO, even though she was neither authorized by the 22nd Ward Democratic Committee to register it as an RCO in the first place, nor designate herself as its primary contact. And under the plain language of the Zoning Code and City Planning Commission Regulations, any rights associated with the City's RCO program are held by the *organization*, not any individual. Plaintiff's theory of this case would undermine these basic rules with the result that *any* individual who first submits an RCO registration application for an organization—whether authorized to do so or not—may hold the organization hostage, being removed as primary contact only if the individual consents.

In addition, Plaintiff here failed to adduce any evidence of a First Amendment violation by Ms. Bass or the City at the preliminary injunction hearing. Nor did she adduce evidence of a due process violation, if that is what the Amended Complaint's citation to the Fourteenth Amendment meant to indicate. Instead, the evidence shows that Plaintiff was not retaliated

against for any First Amendment activity, that Plaintiff has no protected interest in the "primary

contact position," and that the act of changing the 22nd Ward Democratic Committee's RCO

registration to reflect the organization's choice of contact person does not constitute state action.

Even if that were so, Plaintiff has not alleged nor produced evidence of a specific policy or

practice of the City that caused a constitutional violation as required for municipal 42 U.S.C. §

1983 liability.

For those reasons, as discussed in more detail below, the Court should deny Plaintiff's

motion for preliminary injunction.

## BACKGROUND[1]

**The Parties.**

 Plaintiff Carla Cain is an elected local committeeperson, previously serving as the First-

Vice Chair for the 22nd Ward Democratic Committee. Trans. of the Prelim. Inj. Hearing ("T."),

76:15-22. Defendant Cindy Bass is the elected ward leader for 22nd Ward Democratic

Committee, as well as the councilmember for the 8th District of Philadelphia. T.76:15-22. In

2018, Plaintiff and Ms. Bass were both candidates in the election race for ward leader of the

22nd Ward Democratic Committee. T.25:1-8. Ms. Bass won the election, and since then,

Plaintiff has publicly criticized and disagreed with Ms. Bass. T.24:1-6.

The Philadelphia City Planning Commission ("PCPC") is a City of Philadelphia (the

"City") agency that oversees land use and development in Philadelphia. *See* Phila. Code § 14-

---

[1] Defendants rely on and incorporate the parties' Stipulation of Undisputed Facts and Joint Exhibits. *See* ECF No. 30. Defendants file this brief in accordance with the Court's direction at the hearing (*see* T.178), and will provide proposed findings of fact and conclusions of law (*see* J. Kenney Policies and Procedures p. 18) if the Court requests such a submission. Defendants attach portions of the Joint Exhibits cited herein for ease of reference.

105; *What we do*, PCPC, https://www.phila.gov/departments/philadelphia-city-planning-commission/.

**Registered Community Organizations.**

The Philadelphia Zoning Code (the "Code") provides that an organization seeking recognition as a Registered Community Organization ("RCO") must register with the PCPC. Phila. Code § 14-303(11A). Three categories of organizations can register: (1) a volunteer organization, a Pennsylvania nonprofit corporation, an unincorporated association; (2) a Pennsylvania municipal authority that either serves as a Neighborhood Improvement District Management Association or is itself a Special Services District; (3) or a political committee that represents the members of a political party within a ward. *Id.* § 14-303(11A)(a)(.1). The registration requires primary contact information. *Id.* § 14-303(11A)(b)(.2); (g) (authorizing PCPC to make regulations regarding RCOs); PCPC Regs., 12.3.5.2 (Nov. 2016) (requiring the "name of the organization's primary contact person"); PCPC Regs., 12.3.2.2.2 (Nov. 2019) (same); PCPC Regs., 12.3.2.2.2 (Nov. 2021) (same). This is reflected in the PCPC's RCO application. Joint Exhibits ("JE") 1-5. There is a one-month RCO registration period in June every year, and registration is good for two years before it must be renewed. PCPC Regs. 12.3.2, 12.3.3 (Nov. 2016); PCPC Regs., 12.3.1.1, 12.3.1.2 (Nov. 2019); PCPC Regs., 12.3.1.1, 12.3.1.2 (Nov. 2021). Under the PCPC Regulations (the "Regulations"), an organization may change its registration information at any time and the PCPC Executive Director may require "any additional application materials deemed necessary." PCPC Regs., 12.3.5.9, 12.3.8 (Nov. 2016); PCPC Regs., 12.3.2.2.10, 12.3.4 (Nov. 2019); PCPC Regs., 12.3.2.2.10, 12.3.4 (Nov. 2021).

**2019 RCO Application.**

Plaintiff submitted an RCO application on June 15, 2019. JE 2. The application identified the 22nd Ward Democratic Committee as the organization being registered, identified the type of organization as ward committee, and included confirmation that the "RCO is a Political Ward." *Id.* Plaintiff included her contact information for the primary contact. *Id.* The PCPC accepted the application. T.104:8-18. Plaintiff did not seek authorization from the ward leader or the committee before she submitted the application. *See* T.68:13-19; ECF No. 30, ¶ 19.

Ms. Bass became aware of this application on behalf of the 22nd Ward Democratic Committee in 2019, sometime after the registration was complete. T.28:10-15. Ms. Bass asked Christine Foster and Dominic Mathis if they would serve as contacts for the RCO function of the 22nd Ward Democratic Committee, and they accepted. T.28:18-29:1.

**2020 RCO Application.**

On August 13, 2020, an RCO form was submitted on behalf of the 22nd Ward Democratic Committee, naming Christine Foster and Dominic Mathis as contacts. JE 3. The application included a ward leader certification signed by the ward leader, Ms. Bass. JE 3.

Because the 2019 application had not yet expired, and there could not be more than one RCO under the same political ward, the PCPC treated the application as a request to change primary contact information for the 22nd Ward Democratic Committee RCO. T.35:11-36:24.

On August 20, 2020, PCPC emailed Plaintiff to confirm if she was aware of the recently submitted application with new contact information and ward leader certification. T.79:3-80:1; JE 12 at 25. On September 2, 2020, PCPC followed up with Plaintiff, writing that because she failed to respond, they would be "moving forward with the changes to organization name and primacy contacts as requested in the newly submitted registration." T.80:2-12; JE 12 at 25.

Plaintiff responded the same day, asking to discuss, and PCPC responded as follows to explain

their procedure:

> When we receive requests to change RCO info from someone other than
> the primary contact, we reach out to the primacy contact to confirm. If the
> primary contact doesn't respond or contests the request for changes, we'll
> reach out to organizational leadership (in this case the ward leader) for
> confirmation. We're taking the ward leader's signature on the recently
> submitted registration as a confirmation of the request to change
> information in this case.

T.93:1-94:1; JE 12 at 23. Plaintiff contested the change, and was not removed as primary contact

in 2020, as the PCPC continued its deliberation into how best to handle the dispute. T.107:12-25.

**2021 RCO Application.**

On June 3, 2021, Plaintiff submitted a renewal RCO application for the 22nd Democratic

Ward Committee. JE 5. In the application, Plaintiff certified that she was "applying for RCO

status on behalf of a political ward, and that the ward committee and ward leader are aware and

have authorized this application for RCO status." T.91:21-92:16; JE 5. At the time Plaintiff made

this certification, she was aware that the ward leader, Ms. Bass, contested her role as primary

contact. T.90:1-8, 16-20; 92:9-16.

On September 24, 2021, the PCPC emailed participants for a particular zoning matter that

Plaintiff was not the primacy contact for the 22nd Ward Democratic Committee RCO. JE 12 at

120-21. Plaintiff contested this, and the PCPC notified Plaintiff that she would "remain the

primary RCO for the 22nd Ward Democratic Committee," while they continued to attempt to

resolve the dispute. JE 12 at 119-20.

PCPC requested a written confirmation for a change in contact information from the ward

leader, Ms. Bass. T.139:2-25. On October 13, 2021, Ms. Bass wrote a letter to the Executive

Director of PCPC stating: "As Ward Leader of the 22nd Democratic Ward, I am asking that

5

Christine Foster be listed as the primary contact and committee chair for the 22nd Ward Democratic RCO." JE 6. The change was made and Plaintiff learned that she was no longer the primary contact of the 22nd Ward Democratic Committee RCO. T.87:6-12.

## ARGUMENT

Preliminary injunctive relief is an "extraordinary remedy, which should be granted only in limited circumstances." *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merk Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002). That is particularly true where, as here, Plaintiff is requesting a mandatory injunction to change, not preserve, the status quo. To obtain a preliminary injunction, the plaintiff must demonstrate (1) a significant risk of irreparable harm and (2) a substantial likelihood of success on the merits. *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017). "[W]here the relief ordered by the preliminary injunction is mandatory and will alter the status quo, the party seeking the injunction must meet a higher standard of showing irreparable harm in the absence of an injunction." *Bennington Foods LLC v. St. Croix Renaissance, Group, LLP*, 528 F.3d 176, 179 (3d Cir. 2008) (citation omitted). The absence of either of these factors precludes injunctive relief. *Hoxworth v. Blinder, Robinson & Co., Inc.*, 903 F.2d 186, 197 (3d Cir. 1990). If the moving party carries this threshold burden, the court must then balance the equities and consider "the possibility of harm to other interested persons . . . [and] the public interest." *Reilly*, 858 F.3d at 179 (citation omitted); *see Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (urging careful consideration of "the public consequences in employing the extraordinary remedy of injunction").

As set forth below, Plaintiff has failed to establish either irreparable injury or a substantial likelihood of success on the merits. Nor do the equities or the public interest favor granting extraordinary injunctive relief. Accordingly, Plaintiff's motion for a preliminary injunction must be denied.

6

## I.   PLAINTIFF IS UNLIKELY TO SUCCEED ON THE MERITS.

### A.   Plaintiff Has Failed to Establish a Constitutionally Protected Interest.

Plaintiff has no liberty or property interest in the "primary contact" position for the 22nd Ward Democratic Committee RCO and adduced no evidence at the hearing that Plaintiff's removal from that position was motivated in any manner by Plaintiff's partisan political affiliation. Thus, Plaintiff fails to demonstrate a likelihood of success on her First or Fourteenth Amendment claims.[2] In addition, because it is not presented in the Amended Complaint, Plaintiff may not seek preliminary relief on the basis of a Fourteenth Amendment Due Process violation. For these reasons, the Court should deny Plaintiff's request for a preliminary injunction.

#### 1.   *Plaintiff is not likely to succeed on a claim for violation of her First Amendment rights.*

Plaintiff was not a public employee and held no public office, nor is there any evidence that she was removed as "primary contact" for her political beliefs. The cases Plaintiff cites in support of her claim establish that it is a violation of the First Amendment to practice "patronage" in public employment, which requires public employees to "provide . . . support for the favored political party." *Elrod v. Burns*, 427 U.S. 347, 359-60 (1976); *see also Adams v. Gov. of Delaware*, 922 F.3d 166, 176 (3d Cir. 2019) (regarding a challenge to the requirement that judges in Delaware be a member of the Democratic or Republican parties), *vacated and remanded sub nom. Carney v. Adams*, 141 S. Ct. 493 (2020)). But here, the position of "primary contact" is not a "public" one—it is a position at a private organization. *See* Phila. Code § 14-303(11A) (providing for "Registered Community Organizations" and that the "Commission will

---

[2] Plaintiff's Complaint and Motion for Preliminary Injunction assert First Amendment claims applicable to public employees; while Plaintiff does not specifically base a claim on a denial of a property interest protected by the Fourteenth Amendment, because of its analogous nature to Plaintiff's First Amendment claims, Defendants address it here.

only register an organization as an RCO if" it meets certain criteria); PCPC Regs., 12.3.1

(providing that "[o]rganizations shall apply for RCO registration"); 12.3.5.2 (organizations must

provide "[t]he name of the organization's primary contact person"); 12.3.8 ("An RCO may

submit a written request . . . to correct or update their registration information at any time.")

(Nov. 2016). Plaintiff received no compensation or authority from the position of "primary

contact," as the Regulations provide. Moreover, Plaintiff and Ms. Bass are members of the *same*

political party; there is no "patronage" claim here. Regardless of any alleged internal political

rivalry, Plaintiff provided no evidence for political retribution of any kind on the part of Ms.

Bass or the City. T.98:6-11; T.137:9-14.

Plaintiff testified that she was not prevented from participating in other RCOs, creating

her own organization to register as an RCO, or from accessing public information or

participating in public hearings regarding zoning matters. T.98:12-20. Those rights remain intact.

There is no evidentiary support for Plaintiff's First Amendment claims and, thus, she is not likely

to succeed on the merits of her claims.

### 2. *Plaintiff is not likely to succeed on a claim for violation of due process.*

In addition to demonstrating a likelihood of success on the merits, "there must be 'a

relationship between the injury claimed in the party's motion [for preliminary injunction] and the

conduct asserted in the complaint.'" *Ball v. Famiglio*, 396 F. App'x 836, 837 (3d Cir. Oct. 7,

2010) (quoting *Little v. Jones,* 607 F.3d 1245, 1251 (10th Cir.2010)). Because Plaintiff failed to

complain of a Fourteenth Amendment due process violation in the Amended Complaint, she

cannot now rely on that theory to demonstrate a likelihood of success on the merits.

Nonetheless, if the Court concludes that the Amended Complaint sufficiently contains a

procedural due process claim, the "range of interests protected by procedural due process is not

infinite," *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 570 (1972), and the Code

and Regulations at issue here make clear that the registration is on behalf an "organization," not an individual. The organization here is the 22nd Ward Democratic Committee, a private organization led by Ms. Bass. Nothing in the Code or Regulations gives an individual rather than an organization the right to determine who serves as the organization's primary contact. Because Plaintiff was not terminated from public employment based on her political activity, and does not have a protected liberty or property interest, this Court must deny the preliminary injunction.

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Roth*, 408 U.S. at 569. Liberty interests, while not "define[d] with exactness," include "freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men." *Id.* at 572. Here, Plaintiff does not allege a violation of any protected liberty interest. *See* ECF No. 10, Am. Compl.; ECF No. 15, Mot. for Prelim. Inj.

"The Fourteenth Amendment's procedural protection of property," on the other hand, "is a safeguard of the security of interests that a person has already acquired in specific benefits." *Id.* at 576. These interests "are not created by the Constitution." *Id.* at 577. "Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.* A

9

collective bargaining agreement may create a right to "not being suspended without just cause" for a public employee, *Dee v. Borough of Dunmore*, 549 F.3d 225, 231-32 (3d Cir. 2008), or a statute may create a right to public benefits by "defining eligibility for them," *Roth*, 408 U.S. at 577. When evaluating whether an individual has a protected property interest, the Court turns to the language of the statute (or, in this case, ordinance) at issue. *See Robb v. City of Philadelphia*, 733 F.2d 286, 292-93 (3d Cir. 1984) (examining a Philadelphia ordinance to evaluate a public employee's property interest, and finding that the employee had an interest in not being dismissed or demoted without just cause, but that employee's transfer did not implicate a protected interest).

Plaintiff has failed to establish her entitlement to the "primary contact" position under the plain language of the Code and Regulations. The gravamen of Plaintiff's claim is that the "primary contact" position is akin to public employment and, thus, entitled to protection and that her removal, somehow, violated her First Amendment rights. But Plaintiff's argument ignores the language and structure of the Code and Regulations, which create no individual right.

As discussed above, the relevant Code provisions provide that the "Commission will only register *an organization* (in this case, the 22nd Ward Democratic Committee) as an RCO if" it meets certain, enumerated criteria. Phila. Code § 14-303(11A) (emphasis added). The Code does not confer any individual right or benefit. Turning to the PCPC Regulations, they, too, provide that "*organizations* shall apply for RCO registration."  PCPC Regs., 12.3.1 (Nov. 2016) (emphasis added); PCPC Regs., 12.3 (Nov. 2019) (same); PCPC Regs. 12.3 (Nov. 2021) (same). The organization's application must include, among other things, "[t]he name of the *organization's* primary contact person." PCPC Regs., 12.3.5.2 (Nov. 2016) (emphasis added); PCPC Regs., 12.3.2.2.2 (Nov. 2019) (same); PCPC Regs., 12.3.2.2.2 (Nov. 2021) (same).

Finally, "[a]n *RCO*," not an individual, "may submit a written request . . . to correct or update their registration information at any time." PCPC Regs., 12.3.8 (Nov. 2016) (emphasis added); PCPC Regs., 12.3.4 (Nov. 2019) (same); PCPC Regs., 12.3.4 (Nov. 2021) (same).

Plaintiff refers to the position as one of "public office," *see, e.g.,* ECF No. 15-1, Mot. for Prelim. Inj., 10, but it is not "public"—it is the contact person selected by and for the 22nd Ward Democratic Committee, an indisputably private organization. Nor is it an "office"—it comes with no compensation or authority. Instead, the "primary contact" is merely the individual selected by the private organization to act as a conduit for streamlined, already publicly available zoning information. Here, regardless of Plaintiff's initial unauthorized registration of the 22nd Ward Democratic Committee—an organization for which she was indisputably not the ultimate decisionmaker—when the organization determined through its leadership that it desired a different contact person, it was entitled to do so.

That the 2019 and 2021 editions of the Regulations provide that the request to change information "shall be submitted or verified by the primary contact person . . . unless the primary contact is unavailable," does not create a property right in the primary contact role. Nothing in that provision converts the private, organization-selected position into a public one, nor does it confer any compensation or authority upon a primary contact. PCPC Regs., 12.3.4 (Nov. 2019); PCPC Regs., 12.3.4 (Nov. 2021) (same). Indeed, to "verify" means "[t]o prove to be true; to confirm or establish the truth or truthfulness of; to authenticate." Verify definition, *Black's Law Dict.* (11th ed. 2019), *available at* Westlaw. Plaintiff does not dispute that Ms. Bass is the ward leader of the 22nd Ward Democratic Political Committee, nor does Plaintiff assert that the request to remove her as primary contact was somehow fraudulent; rather, Plaintiff simply disagreed with it. T.93:19-21; T.92:13-94:12; ECF No. 30 ¶ 3.

Because Plaintiff has no protected First Amendment or property interest in the "primary contact" role, she is not likely to succeed on the merits of her claim and this Court should deny Plaintiff's motion for preliminary injunction.

### B. Even if Plaintiff Established an Interest Protected by the Fourteenth Amendment, She Received All the Process She Was Due.

Even if the Court concludes that Plaintiff has a protected liberty or property interest in the position of "primary contact," Plaintiff nonetheless received all process she was due before removal. The 22nd Ward Democratic Committee requested the change in contact person in August 2020. The City notified Plaintiff of the requested change, and understood Plaintiff's position in opposition. When Plaintiff objected, the City deferred making the change until it investigated further. The City verified that the request came from the leadership for the organization, and then implemented the change more than year after it was requested by the 22nd Ward Democratic Committee, informing Plaintiff that it was their practice to defer to the leadership of an RCO regarding primary contact information. The City essentially reconsidered the change request twice. No amount of additional process would have changed that the undisputed leader of the 22nd Ward Democratic Committee had assigned someone other than Plaintiff to serve as the RCO contact person for the 22nd Ward Democratic Committee. Plaintiff's disagreement with the ultimate decision does not establish a violation of procedural due process. Because Plaintiff received all the process she was due, she is not likely to succeed on the merits of her claim and this Court should deny the motion for preliminary injunction.

"To determine what procedural protections the Constitution requires in a particular case," the Court "weigh[s] several factors." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and

administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* (quoting *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976)).

Here, the private interest that will be affected by the official action is the *organization's*, not of any individual. The decision of who to select as "primary contact," as discussed *supra*, rests squarely with the organization. Plaintiff's interest, in contrast, is minimal. Plaintiff may create her own organization and register as an RCO, and may participate in all aspects of the zoning process as before. The only effect of Plaintiff not being the primary contact for the 22nd Ward Democratic Committee RCO is on her alleged intra-organization dispute with Ms. Bass.

Second, Plaintiff's proposed remedy—reinstatement—establishes that there are no additional or substitute safeguards that could have prevented the result here. The evidence shows that the City received a request from the ward leader to change the organization's primary contact and finally made the change more than a year after the request, after speaking and corresponding with both Plaintiff and the ward leader on multiple occasions. The deprivation, if any, was not erroneous, and the City's process does not create an unreasonable risk of an erroneous deprivation.[3]

Finally, it is difficult to weigh the additional burden of more process when none is suggested. However, the 22nd Ward Democratic Committee has a definitive interest in choosing its own contact person, and the City in this case has a definitive interest in administering the

---

[3] Plaintiff's proposed reading of the regulations at issue would lead to an absurd result. Essentially, Plaintiff argues that because she was first to submit an application for RCO recognition of the 22nd Ward Democratic Political Committee—which she indisputably was not authorized to do—that only Plaintiff can authorize a change of primary contact person. Plaintiff, thus, would hold the RCO function of an organization for which she was never a decisionmaker hostage. But the regulations do *not* provide that Plaintiff must "authorize" any change and, indeed, specifically state that *an RCO* may change its contact information at any time. *See supra* at 12-13.

RCO program efficiently, ensuring that organizations may select the primary contact of its choice, and implementing the RCO process set forth in the Ordinance and Regulations. A decision here that would require the City to dictate to a particular organization who that organization must name as its primary contact would itself raise First Amendment implications. Moreover, the City lacks the authority under the Code and Regulations to "reinstate" Plaintiff as primary contact, as she requests, over the objection of the organization that is registered as an RCO.

Plaintiff may posit that an "appeal" process is appropriate in this circumstance, but that argument is a red herring. An *organization* may appeal its denial of RCO recognition, *see e.g.,* PCPC Regs., 12.3.3 (Nov. 2019), but because there is no individual right under the regulations, there is no individual right of appeal in any circumstances. The organization selects its primary contact and may change it at will. *See* PCPC Regs., 12.3.4 (Nov. 2019). No appeal could conceivably be necessary or change the outcome in this case.

### C.   Plaintiff Cannot Establish State Action.

Plaintiff will not prevail on the merits because she cannot demonstrate state action necessary to carry out her claims under 42 U.S.C. § 1983, and the First and Fourteenth Amendments.[4] Plaintiff concedes that she is not suing Ms. Bass in her official capacity as a councilmember, but rather as a private individual. ECF No. 10, Am. Compl., caption & ¶ 2. Regardless, the record shows that Plaintiff's dispute is internal to the 22nd Ward Democratic Committee and with its leader Ms. Bass. Ms. Bass's selection of someone other than Plaintiff to serve as the RCO contact person for the 22nd Ward Democratic Committee does not implicate

---

[4] Although the Court disagreed with the Defendants on this point at the motion to dismiss stage, now there is record evidence and testimony demonstrating that this is a private political party dispute that does not involve state action.

Ms. Bass's role on City Council, nor the City's action other than implementing a change in contact that the organization requested, according to its regulations. For those reasons, the authorities Defendants relied upon in their motion to dismiss are applicable to this matter; it is a dispute within a private, political organization, into which this Court should not wade. *See, e.g., Barber v. Horsey*, Civil Action No. 91-4265, 1991 WL 258836 *2 (E.D. Pa. Dec. 3, 1991) ("[T]he internal affairs of a political party, specifically the filling of a party office, is not state action; nor does it constitute action under color of state law."), *aff'd*, 972 F.2d 1330 (3d Cir. 1992) (citing *McMenamin v. Phila. Cty. Democratic Exec. Comm.*, 405 F. Supp. 998 (E.D. Pa. 1975)).

Plaintiff's misleading effort to conflate Ms. Bass's two roles does not change that. Indeed, Ms. Bass testified that "absolutely" she "make[s] an effort to keep [her] councilperson and ward leader roles separate," and provided that she does not involve herself in zoning matters in the 22nd Ward as ward leader given that as the 8th district councilmember, she is obligated to weigh in on them. T.64:20-22.[5]

Representatives from the Planning Commission testified that under their regulations and policies, councilmembers do not have the authority to choose primary contacts for RCOs T.132:21-24. Those representatives also testified that in the event of a dispute regarding the primary contact of a ward committee RCO, their practice is to defer to the ward leader.[6]

---

[5] Plaintiff alleges that Ms. Bass used, and the City was passive in her use of, councilmanic prerogative to remove Plaintiff as primary contact. There is no testimony, from Plaintiff or any other witness, or record evidence supporting this allegation.

[6] Jonathan Goins of the PCPC testified that a similar situation had occurred regarding the 12th Ward—"the ward leader for that ward, shortly after the registration was submitted, reached out to express that he had not [] authorized the application, asked that he himself be named the primary contact . . . We decided we would, as we did here, reach out to the existing primary. They objected. We then asked from that ward that we get something in writing from the ward

T.111:12-111:10; T.132:21-133:10. They did not deviate from that practice here—when Ms.

Bass disputed Plaintiff's RCO registration, the Planning Commission requested that she, as

elected ward leader of the 22nd Ward Democratic Committee, confirm her choice of primary

contact in writing. T.116:10-18. In choosing the primary contact for the 22nd Ward Democratic

Committee RCO, Ms. Bass was acting as ward leader only, making this precisely the type of

local political dispute that does not involve state action. *See Moore v. Democratic Cty. Exec.*

*Comm. Of Phila.*, Civil Action No. 14-3847, 2014 U.S. Dist. LEXIS 157182 (E.D. Pa. Nov. 6,

2014); *McMenamin v. Phila. Cnty. Democratic Exec. Comm.*, 405 F. Supp. 998, (E.D. Pa. 1975);

*Lynch v. Torquato*, 343, F.2d 370, (3d Cir. 1965); *Barber v. Horsey*, Civil Action No. 91-4265,

1991 WL 258836 (E.D. Pa. Dec. 3, 1991), *aff'd*, 972 F.2d 1330 (3d Cir. 1992); *Acosta v.*

*Democratic City Comm.*, 288 F. Supp. 3d 597 (E.D. Pa. 2018); *Max v. Republican Comm.*, 587

F.3d 198 (3d Cir. 2009).[7]

> ### D. Plaintiff Cannot Demonstrate That Any Constitutional Violation on the Part of the City was Caused by its Policies or Customs, as Required for *Monell* Liability.

Plaintiff cannot succeed on the merits of her claim against the City because even if she

could demonstrate a likelihood of success on her constitutional claims, Plaintiff has failed to

identify any policy or practice of the City that caused the violation. Plaintiff alleges that there

exists an "official" yet "unwritten" policy of "councilmanic prerogative," through which Ms.

---

leader making an explicit request to change that information, and when we received that, we did make that change."  T.111:12-111:10.

[7]The City's alleged action here is to name as the primary contact of an organization the person that the organization selected. While it evaluated the request against its Regulations and practices, it did nothing but institute exactly the change the private, political organization requested. In fact, refusing to recognize the organization's choice of primary contact or spokesperson may itself implicate First Amendment issues.

Bass allegedly changed the primary contact person for the 22nd Ward RCO, and that the City's policy is to "permit" such action by councilmembers. But the evidence shows that the events of this case do not even come within Plaintiff's definition of "councilmanic prerogative." *See* ECF No. 10, Am. Compl., ¶ 27.[8] Further, the only policy or practice of the City specifically identified are within the Zoning Code and the PCPC Regulations—Plaintiff has adduced evidence of no other. Because of the lack of proof of a specific policy or custom that caused the alleged constitutional violation, the City cannot be held liable.

Municipalities "can be sued directly under [section] 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," as well as for "practices of . . . officials" that are "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658, 690 (1978). And the "policy or custom" requirement of *Monell* "applies in [section] 1983 cases irrespective of whether the relief sought is monetary or prospective." *Los Angeles Cnty. v. Humphries*, 562 U.S. 29, 39 (2010). A plaintiff must "specify the relevant 'custom' or 'policy,'" *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009), and "demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 404

---

[8] Alleging that "Under councilmanic prerogative, members of City Council defer to councilmembers who represent specific districts on numerous matters concerning zoning, real estate development, and related matters for such districts." Am. Compl., ¶ 27. Here, there is no zoning or real estate development at issue and there is no allegation or evidence of another councilmember "deferring" to Ms. Bass in any regard.

(1997)). That is, *Monell* plaintiffs must prove that "action pursuant to official municipal policy caused their injury." *Connick v. Thompson,* 563 U.S. 51, 60-61 (2012) (citations omitted).

Plaintiff identifies the alleged "policy" of "councilmanic prerogative," but has submitted no evidence to demonstrate its relevance to this case or that it "caused" Plaintiff's alleged injury. *See* ECF No. 10, Am. Compl., ¶ 26-27; ECF No. 15-1, Mot. for Prelim. Inj., 4-9. Instead, the only relevant policies in this matter are those contained in the Zoning Code and PCPC Regulations, discussed above. Because there is no allegation or evidence that those official policies "caused" the injury that Plaintiff complains of, she cannot establish *Monell* liability against the City.

## II.  PLAINTIFF HAS NOT DEMONSTRATED THAT SHE WILL SUFFER IRREPERABLE HARM ABSENT RELIEF.

To be entitled to the extraordinary remedy of a preliminary injunction, a plaintiff must show an imminent risk of irreparable injury that cannot wait to be redressed until trial is over. *Hynoski v. Columbia Cnty. Redevelopment Auth.*, 485 F. App'x. 559, 563 (3d Cir. 2012). Plaintiff's sole contention on the irreparable harm point is that she allegedly suffered a First Amendment injury. Specifically, in her declaration attached to her motion, Plaintiff states that "she had no ability to communicate with, or received information from developers," and was "deprived of the ability to engage in the process intended for RCOs to be active in the participants in the land development process." ECF No. 15-2, Decl. of Cain, ¶¶ 46, 47. Based on the record, this is inaccurate—Plaintiff is not foreclosed from participating in the RCO process in any number of ways.

First, Plaintiff can establish her own non-ward committee organization, register it as an RCO, and name herself the primary contact. Under the Philadelphia Zoning Code, three categories of organizations can register for RCO status: (1) Volunteer Organization/Civic

Assoc./PA Nonprofit/Unincorporated Association/Other, (2) Neighborhood Improvement District (NID)/Special Services District (SSD), and (3) Ward Committee. Phila. Code § 14-303(11A)(a)(.1).  Although Plaintiff is not the ward leader of a ward political committee and likely does not qualify as an NID or SSD, she still may pursue option (1), and there is no evidence demonstrating why she could not do so. In fact, Plaintiff testified that "no," she was not told that she could not form her own organization and register it as an RCO. T.98:18-20. Likewise, Ms. Bass testified that she would have no objection to Plaintiff doing so. T.71:23-72:1. And even if Ms. Bass did object, Mr. Goins testified that she lacks the authority to intervene in other RCOs. T.132:21-24.

Second, Plaintiff can participate in other active RCOs. There are non-ward committee RCOs that are active within the confines of the 22nd Ward, including East Mt. Airy Neighbors, West Mt. Airy Neighbors, and Cliveden Hills Neighborhood Association. T. 43:11-18; T.62:9-17. In her declaration, Plaintiff stated that she was refused "material" at a single RCO meeting, but neither a City representative nor Ms. Bass were present, nor did Plaintiff testify that anyone at the meeting was acting on behalf of Ms. Bass or the City. *See* ECF No. 15-2, Decl. of Cain, ¶ 40; *see* T.98:15-17. There is no evidence that Plaintiff was in any way foreclosed from joining these organizations, attending meetings of these organizations, and being actively engaged in development issues within the 22nd Ward through these organizations. In fact, Plaintiff testified "no" when asked if she was told she could not attend an RCO meeting. T.98:15-17.

Third, Plaintiff has access to zoning information regarding land developments because it is all publicly available, and zoning board hearings are open to the public for comment and participation. Nothing in the record establishes that being a primary contact of an RCO is anything more than being a conduit for streamlined zoning information that is already publicly

available. Plaintiff is free to use the publicly available information and public forum to express her opinion to the zoning board in any manner she wishes. T.135:8-136:25; T.159:1-6.

Because Plaintiff cannot establish either—let alone both—of the gateway factors for injunctive relief, the Court should deny the request for preliminary injunction.

Moreover, the primary purpose of a preliminary injunction is to preserve the status quo pending a determination on the merits. *See Anderson v. Davila*, 125 F.3d 148, 156 (3d Cir. 1997). Because Plaintiff is not currently serving as the primary contact for the 22nd Ward Democratic Committee RCO, issuing a preliminary injunction now would serve only to alter the status quo by removing Christine Foster as the primary contact. This is yet another factor that weighs against the issuance of the requested preliminary injunction.

## III. THE BALANCE OF THE HARMS AND THE PUBLIC INTEREST FAVOR DENIAL OF THE REQUESTED INJUNCTION.

"The last two factors in the preliminary injunction analysis are whether 'the balance of the equities tips in [the plaintiff's] favor, and [whether] an injunction is in the public interest.'" *City of Philadelphia v. Sessions*, 280 F. Supp. 3d 579, 657 (E.D. Pa. 2017) (citing *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008)). Where the Government is a party, the last two factors in the preliminary injunction analysis merge. *Id.* (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

Both the balancing of the harms and the public interest weigh decisively against an injunction that would elevate the interests of one disgruntled ward committeeperson over the elected ward leader's efforts to responsibly represent the ward, and the PCPC's effective administrative and regulatory functions. At bottom, this is an intra-ward dispute.

Plaintiff spends a few sentences generally contending that "there is no other interested person who will be harmed by [Plaintiff's] reinstatement," and that the vindication of Plaintiff's

First Amendment rights is in the public interest. ECF No. 15-1, Mot. for Prelim. Inj., 12.  The

brevity and substantive deficiency of Plaintiff's arguments on the third and fourth prongs of the

preliminary injunction analysis indicate that Plaintiff realizes how unconvincing her argument is.

   Plaintiff is plainly the only party to this action who does not have any harm to balance.

Ms. Bass has an interest in fulfilling her duties and responsibilities as the elected leader of the

22nd Ward Democratic Committee. To do so requires her ability to exercise discretion as to the

activities of the committee, which includes whether the committee will be registered as an RCO,

which she chose not to do, and who will speak for the committee if it does become registered.[9]

The grant of an injunction would override that discretion, harming Ms. Bass' ward leadership,

and the elected members of the 22nd Ward Democratic Committee that chose Ms. Bass as ward

leader. The City has an interest in the proper and efficient administration of the RCO process

pursuant to the PCPC's interpretation of the Code and Regulations. As discussed in detail above,

Plaintiff was afforded sufficient process by the PCPC pursuant to its practices. An injunction

would harm the City by burdening this established procedure for RCO primary contact disputes.

To require more process is not only unnecessary given that PCPC has a mechanism to handle

situations like this —going to organization leadership—but would significantly burden this

bureaucratic activity. By contrast, Plaintiff was not and is not the leader of 22nd Ward

Democratic Committee, the organization she registered for RCO status. Plaintiff's desire to

represent the 22nd Ward Democratic Committee in a capacity she does not have the authority or

authorization for is not a legally redressable interest, let alone one that outweighs the interest of

---

[9] Ms. Bass testified as to why she, as ward leader, did not seek RCO registration of the 22nd Ward Democratic Committee: "There were a number of other RCOs [] that were already operating in the community. They were doing a great job. There was no need to duplicate efforts . . .there was no immediate need to bring forth another RCO when we already had some really good ones." T.59:17-60:7.

the Defendants in the efficient operation of the RCO process and recognition of ward leader authority. Moreover, as discussed above, Plaintiff may continue to participate in development matters.

Additionally, no public interest is served by allowing a malcontent committeeperson to fraudulently submit an RCO application and purport to speak on behalf of a ward political committee without ward leader authorization—something the federal courts are expressly prohibited from addressing anyway. Indeed, the public interest is best served by the mechanism already put in place by the PCPC—in the event of a disputed primacy contact, looking to the organization itself and its leadership, in the case of a ward political committee, the ward leader, to select its primary contact to serve as the conduit for information throughout the RCO process, and to change that primary contact when the organization so desires.

## CONCLUSION

Plaintiff registered the 22nd Ward Democratic Committee as an RCO, and named herself the "primary contact person," which she lacked the authority to do. When the 22nd Ward Democratic Committee informed the City that it wished to change the contact person, the City took a year to verify the legitimacy of the request with Plaintiff and the ward leader. Discussing with both, the City determined that, in accordance with its regulations, the *organization* could name a primary contact person and change that information at any time upon request. Plaintiff has failed to adduce any evidence of a First or Fourteenth Amendment violation, as discussed above, and this Court should deny the motion for preliminary injunction. Plaintiff's alleged dispute with Ms. Bass regarding the direction and leadership of the 22nd Ward Democratic Committee does not amount to a constitutional violation and, in fact, is not a matter in which this Court should be involved at all.

Respectfully submitted,


**SCHNADER HARRISON SEGAL & LEWIS LLP**

/s/ *David Smith*
David Smith (Pa. I.D. 21480)
Layal A. Issa (Pa. I.D. 329214)
1600 Market Street, Suite 3600
Philadelphia, PA 19103-7286
(215) 751-2190
dsmith@schnader.com
lissa@schnader.com

*Attorneys for Cindy Bass*


**CITY OF PHILADELPHIA LAW DEPARTMENT**

/s/ *Ryan B. Smith*
Benjamin H. Field (Pa. I.D. 93045)
Ryan B. Smith (Pa. I.D. 324643)
1515 Arch Street, 15th Floor
Philadelphia, PA 19102
Phone:  (215) 683-2954
benjamin.field@phila.gov
ryan.smith@phila.gov

*Attorneys for the City of Philadelphia*


Dated: October 17, 2022