IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| CARLA CAIN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | CIVIL ACTION |
| CINDY BASS, a Member of Philadelphia City Council, in her personal capacity only, | : | |
| | : | No. 2:22-cv-00360-CFK |
| and | : | |
| | : | |
| CITY OF PHILADELPHIA, | : | |
| | : | |
| Defendants. | : | |

**DEFENDANTS CINDY BASS'S AND THE CITY
OF PHILADELPHIA'S RESPONSE TO PLAINTIFF'S
PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Defendants Cindy Bass and the City of Philadelphia hereby respond to Plaintiff's

proposed findings of fact and conclusions of law. Consistent with the arguments in their brief

(ECF No. 36), Defendants contend that many of the facts included in Plaintiff's proposed

findings of fact are irrelevant to the motion for preliminary injunction before the Court. For ease

of reference for the Court and the parties, however, Defendants' response to the proposed

findings of fact addresses each numbered fact, indicating where Plaintiff has mischaracterized or

misstated the record evidence as necessary.

I.    **Proposed Findings of Fact**[1]

1.      Admitted that the parties entered a stipulation of facts. ECF No. 30.

2.      Admitted that the parties stipulated to a joint exhibit list. ECF No. 30, JE 1-13.

**A.  Testimony of Defendant Cindy Bass**

1.      Admitted.[2]

2.      This paragraph misstates the testimony. Ms. Bass testified to having different responsibilities regarding real estate development in her different, respective roles. She testified that *as a councilperson*, her responsibilities with respect to real estate development include providing "letters of support to the RCO," and that "[g]enerally, if the community supports a project, we support it." Transcript of Preliminary Injunction Hearing ("T.") 62:1-8.

3.      This paragraph misstates the testimony. Ms. Bass testified as follows: "[W]orking with them as necessary to help [] encourage development [] or the opposition of that in terms of, if we have a project that's problematic for the community, but just really having a strong, working relationship. And also, we do sometimes monthly, sometimes bimonthly calls with all of the RCOs in the district to talk about development issues, concerns they have, things of that nature." T.63:2-10.

4.      Admitted.

5.      Admitted.

---

[1] Defendants use Plaintiff's headings for ease of reference; they are not intended to indicate agreement with or dispute of any particular fact.

[2] Plaintiff's Proposed Findings of Fact and Conclusions of Law (ECF No. 35) contain two paragraphs numbered "1" and two paragraphs numbered "2." Thus, so does this response for ease of reference.

6.      This paragraph misstates the testimony. The entire testimony is as follows: "It varies, depending on what the need is. We may have staff involved if someone is bringing forth a project particularly that's controversial. There are some projects that are [] pretty easy. They go through, they're voted up and down, they stay or they go based on that. On occasion you have projects that are a little more controversial [] where neighbors are [] adamant, the planning commission [] may follow the lead of the community and our lead – or, excuse me, the zoning board, ZBA may follow our lead or they may do their own thing. And so [] those are the cases generally that we are very intimately involved with."

7.      Admitted.

8.      There is no proposed fact in this paragraph.

9.      Admitted.

10.     Admitted. By way of further response, neither Ms. Bass nor Plaintiff testified to specific matters on which they hold opposing points of view.

11.     There is no testimony supporting the assertion that Plaintiff has questioned the "ancillary behaviors" of Ms. Bass.

12.     Admitted.

13.     Admitted that one of the functions of RCOs is to make recommendations to the Zoning Board of Adjustment.

14.     This paragraph misstates the testimony. Mr. Goins testified "I would say that the organization or the RCO itself has certain responsibilities. The primary contact could really be any – you know, in different organizations, that person plays a different role that may or may not involve actually facilitating the meeting. It's just the primary contact that's listed for purposes of

verification."  Mr. Goins further testified "Sure, the person who is listed as the primary contact could play a lot of functions in the process, yes." T.143:18-144:21.

15.     From 2018 to 2022 Plaintiff was the first vice chair of the 22nd Ward Democratic Committee. Plaintiff joined the Democratic State Committee in 2014.

16.     Admitted.

17.     This paragraph mischaracterizes the evidence. The 22nd Ward Democratic Committee was not registered as an RCO between 2013 and 2019.

18.     Admitted that under the Zoning Code any individual or entity seeking a variance or special exception within the City of Philadelphia must communicate with the RCO(s) representing the community members within the affected vicinity of the proposed project. Phila. Code § 14-303(12).

19.     Ms. Bass responded "correct" when asked if the Planning Commission is the gatekeeper of information relating to variance and special exceptions. However, the same information is publicly available. T.135:8-136:25.

20.     This paragraph misstates the testimony and misunderstands the Code and Regulations. RCO applications are governed and administered entirely by the Planning Commission and are not subject to approval by City Council. There is no application to serve as a coordinating RCO. Under the Code, when more than one RCO is operating near the property at issue in a zoning matter, the city council person for the district in which the property is located is responsible to choose which of those RCOs will serve as the coordinating RCO for the project. Phila. Code § 14-303(12)(b)(.2). When there is no affected RCO, the city councilmember or an organization of the councilmember's choice serves as the coordinating RCO. Phila. Code § 14-303(12)(b)(.2)(.c).

4

21.     This paragraph misstates the evidence. Ms. Bass became aware that Plaintiff had registered the 22nd Ward Democratic Committee, of which Ms. Bass was the elected leader, in 2019.

22.     This paragraph misstates the testimony. Ms. Bass testified that upon learning that Plaintiff had registered the 22nd Ward Democratic Committee as an RCO (of which Ms. Bass is the elected leader), she "made a determination that we would [] need a partner that we could work with within the RCO. And as the ward leader, I asked Christine Foster if she would be willing to take on the task." T.28:18-23.

23.     Admitted.

24.     Admitted.

25.     Admitted.

26.     Admitted.

27.     The 2020 application referred to in this paragraph was not anonymous. The computer software by which applications are managed prints all applications, including those submitted by Plaintiff, as anonymous. The 2020 application was submitted by Christine Foster, with a ward leader certification signed by Ms. Bass. JE 3 at 5-6 (ECF No. 36-2 at 20-21).

28.     This paragraph misstates the testimony. Ms. Bass testified "I cannot tell you" when asked "so your August 13, 2020 application wasn't that not treated as a duplicate application out of time." T.31:16-18.

29.     Ms. Bass, in her capacity as ward leader, wrote a letter dated October 13, 2021 to Eleanor Sharpe of the Planning Commission requesting that Christine Foster be listed as the primary RCO contact person for the 22nd Ward Democratic Committee. T.32:2-9; JE 6 (ECF No. 36-2 at 33).

30.     Admitted.

31.     Admitted that Ms. Bass received an email advising her that Plaintiff had registered the 22nd Ward Democratic Committee as an RCO and that was her first knowledge of the registration. Ms. Bass could not have become "aware of Ms. Cain's status as an RCO," as the organization Plaintiff registered was the 22nd Ward Democratic Committee.

32.     Admitted.

33.     Admitted.

34.     This paragraph misstates the testimony. Ms. Bass testified that she understood Jonathan Goins to be in charge of the RCO registration process. T:36-21-24.

35.     This paragraph misstates the testimony. Ms. Bass testified "I believe so" when asked if Christine Foster made an application in 2021 to renew the RCO registration of the 22nd Ward Democratic Committee. T.36:25-37:2.

36.     Admitted.

37.     Admitted.

38.     Admitted.

39.     Admitted.

40.     This paragraph misstates the testimony. Ms. Bass did not "confirm" anything. While referring to Joint Exhibit 12, Ms. Bass testified "uhm-hum" when asked "do you see that?" And she testified that Christian Matozzo asked Jonathan Goins to call him. T.41:1-8.

41.     Admitted.

42.     This paragraph misstates the testimony. The entity for which renewal was sought was the 22nd Ward Democratic Committee of which Ms. Bass was the elected leader. When

asked if it was "true that there is no application made by Christine Foster to renew in 2021," Ms. Bass testified "I don't know. I'm not sure." T.42:14-17.

43.    Admitted.

44.    Admitted.

45.    Admitted.

46.    This paragraph mischaracterizes the evidence. On September 24, 2021, Plaintiff appealed the identification of Christine Foster as the RCO contact for the 22nd Ward Democratic Committee, of which Ms. Bass was the elected leader.

47.    Admitted.

48.    Admitted.

49.    Admitted in part. The email from Mr. Goins was addressed to Jeanine Allen-Bowens and was sent to Ms. Allen-Bowens as well as Nicole Ozdemir, Eleanor Sharpe, and the RCO Notification email account, not to Ms. Bass or any member of her staff. JE 12 at 17; JE 13 at 11.

50.    Admitted.

51.    This paragraph misstates the testimony. Mr. Goins' email addressed "disagreement *about* primary contacts," not "*among* primary contacts." JE 12 at 15-16 (emphasis added); JE 13 at 10-12 (emphasis added). Mr. Goins did not state that "any writing from Bass" would be "sufficient to change the primary contact RCO [sic]." The email provides: "A word doc is fine from Ward Leader Bass representing the 22nd Ward making a specific request to change the primary contact info, name, and e-mail for the 22nd Ward RCO. I haven't spoken yet with Eleanor, but I think that would still be sufficient to make the change." T.47:9-25; JE 12 at 15-16; JE 13 at 10-12.

52. Admitted.

53. This paragraph misstates the testimony. Ms. Bass did not testify and the record does not support that anyone said the letter requested by the Planning Commission would not be sent.

54. Admitted.

55. Admitted.

56. Admitted.

57. Admitted with respect to the designation of Mr. Mathis as Ms. Foster's backup as the RCO contact person for the 22nd Ward Democratic Committee.

58. This paragraph misstates the testimony. When asked "is it your understanding that sometime in approximately November of 2021, the registration that is printed out by the City identifying the primary contracts for RCOs has been changed to identify Christine Foster as the primary contract," Ms. Bass testified "I'm not aware." T.54:13-18. Ms. Bass, the elected leader of the 22nd Ward Democratic Committee, had requested the change more than a year earlier.

59. This paragraph misstates the testimony. When asked about the activities of the 22nd Ward Democratic Committee RCO since Christine Foster's appointment as primary contact, Ms. Bass testified "I think you would have to ask Ms. Foster." T.55:6-9.

60. This paragraph misstates the testimony. Ms. Bass testified "I'm not aware what the procedure is," when an organization's RCO registration is denied. There is no procedure for an individual to register as an RCO. T.56:11-15.

61. This paragraph misstates the testimony. First, it is not a fact that Plaintiff was "removed without due process." That is a legal conclusion that counsel for Plaintiff improperly included in the question. Second, Ms. Bass testified that "Ms. Cain was not authorized to set up

[] the RCO on behalf of the ward, so this never should have happened in the first place." She further testified that "no" she did not have a meeting or discussion with Ms. Cain. T.56:16-57:4.

62.     This paragraph misstates the testimony. Ms. Bass testified "I don't recall ever speaking with him." T.58:8-19.

63.     Admitted.

64.     Admitted.

65.     This paragraph misstates the testimony. Ms. Bass testified "Very rarely. More in the context of [] just unifying the ward because there's been some division around this particular matter." T.59:4-13.

66.     Ms. Bass's complete testimony was: "There were a number of RCOs as I mentioned earlier, there were already operating in the community. They were doing a great job. There was no need to duplicate efforts. [I]t was something that was on the table to be done further down the road in the future [] when you have free time, but there was no [] immediate need to bring forth another RCO when we already had some really good ones." T.59:17-60:1.

67.     This paragraph misstates the testimony. Ms. Bass testified that in 2019 she learned that Plaintiff had submitted an application to register the 22nd Ward Democratic Committee for RCO status. T.65:10-15.

68.     Admitted.

69.     Admitted.

70.     Admitted.

71.     This paragraph misstates the testimony. Ms. Bass testified that as ward leader, she did not authorize Plaintiff to designate herself the contact person or spokesperson for the 22nd Ward Democratic Committee in real estate matters. In response to the question "can you explain

what your objection was?" Ms. Bass testified: "My objection is that [] it was done without any sort of contact, communication [] request, interest []. We weren't notified until the registration was already done. But beyond that, I had some concerns about the representation that she will be providing the community. [] [W]e had a little bit of a history of just sort of disruptiveness and being contrary in a lot of matters." T.68:20-69:2.

72.    Admitted. Ms. Bass signed the ward leader certification for the 2021 application submitted by Christine Foster.

73.    Admitted.

74.    Admitted, except that the registration was for the 22nd Ward Democratic Committee, not a separate entity.

**B.  Testimony of Carla Cain**

75.    Admitted.

76.    Admitted that Plaintiff so testified.

77.    Admitted.

78.    Admitted that Plaintiff testified "correct, yes" when asked "were there other people who were like-minded with you as to approaching development issues." However, Plaintiff did not testify as to what was her approach regarding development issues, how (if at all) her approach differs from those of the RCOs' already serving the community, or who the "like-minded" people were. There is no evidence in the record of any persons other than Plaintiff involved in the RCO registration of the 22nd Ward Democratic Committee.

79.    This paragraph misstates the testimony. Plaintiff did not testify that there was "special notice." She testified that "[y]ou get the opportunity to receive upcoming developments that's going in the area." T.77:19-22. By way of further response, both Jonathan Goins and

Eleanor Sharpe testified that zoning information is publicly available and zoning hearings are open to the public for comment and participation. T.135:8-136:25; T.159:1-6. Additionally, Plaintiff testified "no" when asked if she was told she could not attend a meeting of any already existing RCO already serving the community. T.98:15-17.

80.     Admitted, except that the issue was her unauthorized designation of herself as the RCO primary contact person for the 22nd Ward Democratic Committee.

81.     This paragraph misstates the testimony. Plaintiff testified "My understanding is that it was supposed to be a process of removing me, and I wasn't in any violation to be removed." T.78:8-12.

82.     Admitted.

83.     Admitted.

84.     Admitted.

85.     Admitted.

86.     Admitted.

87.     Admitted to the extent that this paragraph accurately portrays Plaintiff's testimony regarding her recollection of the conversation with Jonathan Goins.

88.     Admitted to the extent that this paragraph accurately portrays Plaintiff's testimony regarding her recollection of the conversation with Jonathan Goins. When asked if Mr. Goins indicated that Plaintiff "would be removed" in 2020, Plaintiff responded that "oh, what basically what he said, he said that she's pressuring, you know, for my removal." T.82:8-11.

89.     This paragraph misstates the testimony. Plaintiff testified that it was her understanding that she was "removed from that role" in 2020 but did not explain the basis of that

understanding. T.82:12-14. In fact, Cain was *not* removed as the primary contact in 2020.
T.107:17-25.

90.     This paragraph misstates the testimony. Plaintiff then testified that she "was
reinstated back again," at some point, which she learned "through emails," but did not specify
what emails, when she received them, or the basis for her understanding that she had been
"reinstated." T.82:15-18. In fact, because she was not removed in 2020, Plaintiff was not
reinstated. *See supra* ¶ 89.

91.     Admitted.

92.     Admitted in part. Plaintiff's email demonstrates that she misunderstood the nature
of the "primary contact" person for an RCO, conflating it with the "head" of an organization
registered as an RCO.  The organization registered was the 22nd Ward Democratic Committee,
the elected leader of which was Ms. Bass. The elected leader of the 22nd Ward Democratic
Committee had designated someone other than Plaintiff to serve as the organizations' primary
contact with respect to the RCO registration. The decision of the ward political committee
regarding who it wished to designate as contact person is not subject to be review by the
Planning Commission. The jurisdiction of the Planning Commission is limited to determining
that the designation actually came from the leadership of the political committee.

93.     This paragraph misstates the testimony. Plaintiff testified that "no," Mr. Goins did
not explain the "procedure to file an appeal on being removed as the RCO head," because there
is no such procedure. Plaintiff was not removed of the "head" of an organization registered as an
RCO; rather, she was replaced as the "primary contact" person for the 22nd Ward Democratic
Committee. T.79:13-80:12; JE 12 at 23-26 (ECF No. 36-2 at 35-37). In fact, Mr. Goins did

explain the procedure for replacement as "primary contact" person. T.81:2-24; JE 12 at 23 (ECF No. 36-2 at 35).

94.     Admitted.

95.     Admitted in part. Plaintiff testified that she sent an email requesting to "appeal [the] notice" that Christine Foster was the RCO contact person for the 22nd Ward Democratic Political Committee, referring to an email sent from the City's RCO notification account. T.85:22-86:2; JE 12 at 120-21 (ECF No. 36-2 at 39-40).

96.     This paragraph misstates the testimony. There is no evidence that Mr. Goins sent the email in question. Plaintiff testified that she received an email from the RCO notification account that the primary contact dispute was being handled by the Philadelphia City Planning Commission rather than the Zoning Board of Adjustment, and that Jonathan Goins would resolve it. T.86:3-86:11; JE 12 at 120-21 (ECF No. 36-2 at 39-40); see also T.46:11-47:8; 52:5-12; 123:16-21 (exchange indicating both City Planning Commission and Zoning Board of Adjustment staff used RCO notification email, including Jonathan Goins and Jeanine Allen-Bowens).

97.     Admitted in part. Plaintiff requested that she "keep [her] RCO duties" while "this is being reviewed," apparently referring to her designation as primary contact person for the 22nd Ward Democratic Committee. T.86:12-16.

98.     This paragraph misstates the testimony. Plaintiff testified that she received an email from the RCO notification account with the subject line "You are the RCO!." T.86:24-87:3; JE 12 at 119-21 (ECF No. 36-2 at 38-40). An individual cannot be "the RCO" under the law or regulations, and Plaintiff cites no evidence to the contrary. Plaintiff cites no evidence that Jonathan Goins sent the email from the RCO notification account that multiple City Planning

Commission and Zoning Board of Adjustment employees used for various purposes at various times. *See* T.46:11-47:8; 52:5-12; 123:16-21.

99.     Admitted in part. Plaintiff testified that the email from the RCO notification account that indicated she would "remain the primary RCO [contact] for the 22nd Ward Democratic Committee." The omission of the ward "contact" is likely a typographical error for "primary contact." T.86:24-87:3; JE 12 at 119-21 (ECF No. 36-2 at 38-40).

100.     This paragraph misstates the evidence. Plaintiff admits that she learned that the elected leader of the 22nd Ward Democratic Committee had designated Ms. Foster to serve as the RCO primary contact for the 22nd Ward Democratic Committee on August 30, 2020. What she learned in the fall of 2021 is that she Planning Commission had, after investigation, corrected its records to reflect the 22nd Ward Democratic Committee's choice of RCO contact person.. T.87:6-12.

101.     Admitted in part. Plaintiff testified that she once communicated with Eleanor Sharpe, but she could not recall whether she spoke with Ms. Sharpe at her deposition and Ms. Sharpe testified that did not recall having a conversation with Plaintiff. T.87:13-16, 21-23; 97:20-24; 152:11-13.

102.     Admitted in part. Plaintiff testified that she once communicated with Eleanor Sharpe, but she could not recall whether she spoke with Ms. Sharpe at her deposition and Ms. Sharpe testified that did not recall having a conversation with Plaintiff. T.87:13-16, 21-23; 97:20-24; 152:11-13.

103.     Admitted in part. Plaintiff testified that she was not aware of "any of those rules," when asked about a bylaw or rule of the 22nd Ward Democratic RCO, the City Democratic party, or the State Democratic party. T.88:3-7. Plaintiff's personal knowledge of any bylaw or

rule of a private, political organization does not establish the absence of any particular bylaw or rule. In any event, this "fact" relates to the internal operations of a private, political organization. Plaintiff admitted that she did not lead the 22nd Ward Democratic Committee and became aware of a dispute regarding who would be the primary contact for the Ward RCO on August 20, 2020. T.89:9-15, 90:1-5.

104.    Admitted.

105.    This paragraph misstates the testimony. Plaintiff was presented with her prior inconsistent statement made in her deposition that she could not recall whether she spoke with Eleanor Sharpe. Eleanor Sharpe also testified that she could not recall having a conversation with Plaintiff regarding the matter. T.96:12-97:24.

106.    Admitted, but that testimony is inconsistent with her testimony that she did not recall speaking with Ms. Sharpe and with Ms. Sharpe's testimony that she did not recall speaking with Plaintiff.

107.    Admitted in part. Plaintiff could not provide any fact regarding how anyone retaliated against her for her First Amendment activity, instead only stating a legal conclusion that the City, instead, "deprived her of due process," a claim not asserted in the Amended Complaint. T.98:21-24.

108.    Admitted.

109.    Admitted. By way of further response, the application's "questions" prompt the applicant to include the information required by the Philadelphia Code and the PCPC Regulations. Phila. Code § 14-303(11A)(a), (b), (c); PCPC Regs. § 12.3.5 (effective June 27, 2016); *Id.* § 12.3.2 (effective Nov. 18, 2021).

### C. Testimony of Jonathan Goins

110.    Admitted.

111.    Admitted.

112.    Admitted that the application was approved as to form only.

113.    Admitted.

114.    This paragraph misstates the testimony. Mr. Goins testified that he knew Mr. Matozzo as a member of council staff. T.104:24-105:7. Because Ms. Bass' role on council requires her office's involvement in real estate development and zoning issues with her district, she coordinates with RCOs. T.62:1-64:19.

115.    Admitted in part. Notwithstanding the designation of Ms. Foster by the leadership of the 22nd Ward Democratic Committee in August 2020, the Planning Commission did not adjust its records to implement the designation of Ms. Foster as primary contact until October 2021 after it had considered Plaintiff's objections and obtained satisfactory evidence that the designation of Ms. Foster was authorized by the ward leader. *See supra* ¶¶ 89, 100. *See also* T.110:18-111:2.

116.    Admitted.

117.    Admitted.

118.    This paragraph misstates the testimony. Mr. Goins stated that his understanding of the procedure for a contact change was to "reach out to the existing primary contact to confirm the request that has been made" and stated that they "did follow that procedure" with Ms. Foster's application. T.107:4-11. There is no testimony and no basis in law or regulation for the "fact" that the primary contact must "agree" to the change. The PCPC Regulations provide that

16

the "request shall be submitted or verified by the primary contact person as listed on the RCO's current registration . . . ." PCPC Regs. § 12.3.4 (effective Nov. 18, 2019).

119.    This paragraph misstates the testimony. Mr. Goins stated that Plaintiff "contested the change." T.107:12-16. There is no testimony and no basis in law or regulation for the "fact" that the primary contact must "consent" to the change. The PCPC Regulations provide that the "request shall be submitted or verified by the primary contact person as listed on the RCO's current registration . . . ." PCPC Regs. § 12.3.4 (effective Nov. 18, 2019).

120.    This paragraph misstates the testimony. Mr. Goins notified Plaintiff that they were "following the procedure" to change the primary contact but that they "did not remove her as the primary contact" in 2020. T.107:17-25.

121.    Admitted in part. Mr. Goins did not consider the ward leader certification attached to the 2020 Christine Foster application sufficient to change the primary contact person because they "wanted to have for the record . . . a specific, explicit request to change the contact information." T.131:2-21; *see supra* ¶ 120.

122.    Admitted.

123.    Admitted.

124.    Admitted.

125.    Admitted.

126.    This paragraph misstates the testimony. While the PCPC Regulations do not specifically address the situation of a dispute regarding who should be designated as an organization's primary contact for RCO purposes, Mr. Goins relied on their "authority and past practice" for "similar situations." T.111:3-11. Indeed, in 2019, Mr. Goins followed the same procedure when making a change to contact information after confirming with the organization's

leadership despite an existing primary contact's objection regarding another ward committee RCO. T.111:12-112:7.

127.     Admitted.

128.     Admitted. By way of further response, the version of the PCPC Regulations that Mr. Goins read at the request of counsel was effective November 18, 2019.

129.     Admitted.

130.     This paragraph misstates the testimony. Mr. Goins confirmed that Regulation 12.3.4, governing changes in contact information, had not changed in the relevant period. T.117:3-8; *see* PCPC Regs. § 12.3.8 (effective June 27, 2016) ("An RCO may submit a written request to the Executive Director to correct or update their registration information at any time."); *Id.* § 12.3.4 (effective Nov. 18, 2019) (adding: "This request shall be submitted or verified by the primary contact person as listed on the RCO's current registration unless the primary contact is unavailable due to death, medical condition, or other exceptional circumstances. The Executive Director may request additional documentation to verify any modification to an RCO's registration information.").

131.     Admitted in part. Mr. Goins referred to another portion of the PCPC Regulations pertaining to new RCO registrations and renewals, not changes to contact information. T.117:13-20; PCPC Regs. § 12.3.2.2.10 (effective Nov. 22, 2021) ("Any additional application materials deemed necessary by the Executive Director to determine an organization's compliance with these regulations and the Zoning Code, which may include, but is not limited to, verification that the organization has authorized the individual filing the application to register the organization as an RCO and has approved the listed primary contact person, secondary contact person, and person designated to participate in the Civic Design Review process.")

132.     Admitted that Mr. Goins testified that the PCPC Regulation governing new RCO applications and renewals was not effective until November 21, 2021, after he made the change to the contact information for the 22nd Ward Democratic Political Committee RCO. By way of further response, Regulation 12.3.4—which had not been changed—regarding the change of contact information applied, not Regulation 12.3.2.2.10, which was changed. T.117:22-118:1, 138:21-139:18.

133.     Admitted.

134.     Admitted.

135.     Admitted.

136.     Admitted.

137.     This paragraph misstates the testimony. Mr. Goins agreed that procedures exist for when an "RCO gets out of line," as stated by counsel, but was not asked regarding procedures governing the conduct of a primary contact person, and there is no record evidence on the point. T.123:11-13. By way of further response, the issue here is not discipline, but rather the right of a registered political committee to choose its own RCO primary contact.

138.     This paragraph misstates the testimony. Mr. Goins did not agree with Plaintiff's counsel's statement about Mr. Richardson's email regarding Plaintiff because he was not asked. T.123:16-23. By way of further response, Ms. Foster was designated the primary contact, not chair.

139.     Admitted. By way of further response, Jeanine Allen-Bowens was working for the Zoning Board of Adjustment for a time and was sending the RCO notification emails. T.123:16-23.

140.    Admitted that Mr. Goins received an email as stated from Ms. Bass. Mr. Goins did not know what the email from Ms. Bass "mean[t]" when asked by counsel. T.123:24-11.

141.    Admitted, except thatMr. Goins could not recall how Ms. Bass identified herself on the phone. T.124:15-20.

142.    Admitted.

143.    Admitted in part. By way of further response, Mr. Goins requested that Ms. Bass "put her ward leader hat on" because he "knew that she had both roles," and PCPC "felt the request should come from the ward leader," or Ms. Bass "in that role." T.127:15-25.

144.    Admitted. By way of further response, *see supra* ¶ 143.

145.    This paragraph misstates the testimony. Mr. Goins testified that an application for an RCO is from "an organization, ward or otherwise, that applies for status as a registered community organization," not an individual. In the case of an appeal from a rejected application, it is an "organization" that was "rejected for RCO status" and "the organization" that "is appealing that decision." T.131:22-132:20.

146.    Admitted that "no such procedure" applied in this situation. There is no appeal procedure for an organization changing its designated primary contact. T.128:15-17.

147.    Admitted. Mr. Goins testified that he maintained the list of organizations registered as RCOs and that he did not replace Plaintiff as the primary contact for the 22nd Ward Democratic Committee RCO until October 2021. T.134:24-135:7, 116:16-18, 107:24-25.

148.    Admitted. Mr. Goins stated that it was not the "typical procedure to inform anyone" when a change is made to an organization's designated primary contact. T.129:3-9.

149.    Admitted. Mr. Goins stated that, unlike registrations and renewals, a request to change contact information may be submitted at any time. T.130:10-21.

150.     Admitted.

151.     Admitted in part. Mr. Goins stated that PCPC "wanted to have for the record . . . a specific, explicit request to change the contact information," and so requested the letter from Ms. Bass. T.131:2-21.

152.     Admitted. By way of further response, Mr. Goins stated that an organization may appeal when its application for RCO status is rejected. T.132:6-20.

153.     Admitted.

154.     Admitted.

155.     Admitted.

156.     Denied as stated. The 22nd Ward Democratic Committee designated Ms. Foster as its primary RCO contact in September 2020. The Planning Commission delayed until October 2021 to implement the change in primary contact while it considered Plaintiff's objections and determined what evidence it would require to determine that the change was authorized by the leader of the ward political committee.

157.     This paragraph misstates the evidence. The ward leader was at all times the person authorized to speak for the ward political committee. The so-called dispute here was how to address the very unusual situation where an individual had, without the agreement of the ward leader, designated herself as primary contact, and then protested the ward leader's designation of someone else to serve as RCO primary contact. The Planning Commission took more than a year to consider the protests before deciding that it would require a letter from the ward leader to implement the change in primary contact requested more than a year before.

### D.  Testimony of Eleanor Sharpe

158.     Admitted.

159.     This paragraph misstates the testimony. Ms. Sharpe testified that she is the "final arbiter of any questions staff might have about making decision[s]" regarding RCOs. T:148:23-25.

160.     Admitted.

161.     Admitted, except that the referral was to the change of primary contact person from Plaintiff to Ms. Foster.

162.     This paragraph misstates the testimony. Ms. Sharpe was asked about "this situation" and whether it was "something that was really following an express[] ordinance or a regulation." T.151:14-18. Ms. Sharpe replied "No," PCPC was "following our practices." T.151:14-19.

163.     Admitted. By way of further response, PCPC Regulation 12.3.4 provides: "An RCO may submit a written request to the Executive Director to correct or update its registration information at any time. This request shall be submitted or verified by the primary contact person as listed on the RCO's current registration unless the primary contact is unavailable due to death, medical condition, or other exceptional circumstances. The Executive Director may request additional documentation to verify any modification to an RCO's registration information." (Effective Nov. 18, 2019).

**E.  Testimony of Christine Foster**

164.     Admitted.

165.     Admitted.

166.     This paragraph mischaracterizes the testimony. Ms. Foster stated that she read the Planning Commission regulations but had not reviewed the "city website governing RCOs and

their functions." T.162:23-164:1. There is no record evidence regarding the "city website governing RCOs and their functions" or what information it contains.

167.    Admitted.

168.    Admitted.

169.    Admitted in part. Ms. Foster provided the "information that [City Planning] asked [her] for," and recalls filling out the final, certification page of the RCO application. T.166:13-167:1. There seemed to be confusion in this area regarding an electronic versus physical, paper application.

170.    Admitted in part. Ms. Foster provided the "information that [City Planning] asked [her] for," and recalls filling out the final, certification page of the RCO application. T.166:13-167:1.

171.    Admitted in part. Ms. Foster clarified that she assumed that she did everything electronically when looking at the application exhibit but did not recall filling out the form; she did not fill out a physical, paper application. T.167:19-168:7.

172.    *See supra* ¶ 171.

173.    Admitted.

174.    Admitted in part. Ms. Foster could not recall the exact date, but recalls confirming her role as primary contact with Mr. Goins. T.177:7-12.

## II.    Conclusions of Law

1.    Under the plain language of the Zoning Code and City Planning Commission Regulations, any rights associated with the City's RCO program are held by the organization, not any individual. The relevant Code provisions provide that the "Commission will only register *an organization* (in this case, the 22nd Ward Democratic Committee) as an RCO if" it meets

certain, enumerated criteria. Phila. Code § 14-303(11A) (emphasis added). The Code does not confer any individual right or benefit. Turning to the PCPC Regulations, they, too, provide that "*organizations* shall apply for RCO registration." PCPC Regs., 12.3.1 (Nov. 2016) (emphasis added); PCPC Regs., 12.3 (Nov. 2019) (same); PCPC Regs. 12.3 (Nov. 2021) (same). The organization's application must include, among other things, "[t]he name of the *organization's* primary contact person." PCPC Regs., 12.3.5.2 (Nov. 2016) (emphasis added); PCPC Regs., 12.3.2.2.2 (Nov. 2019) (same); PCPC Regs., 12.3.2.2.2 (Nov. 2021) (same). Finally, "[a]n *RCO*," not an individual, "may submit a written request . . . to correct or update their registration information at any time." PCPC Regs., 12.3.8 (Nov. 2016) (emphasis added); PCPC Regs., 12.3.4 (Nov. 2019) (same); PCPC Regs., 12.3.4 (Nov. 2021) (same). The organization here is the 22nd Ward Democratic Committee, a private organization led by Ms. Bass, who was elected to that position. Nothing in the Code or Regulations gives an individual rather than an organization the right to determine who serves as the organization's primary contact. Representatives from the Planning Commission testified that under their regulations and policies, councilmembers do not have the authority to choose primary contacts for RCOs. T.132:21-24. Those representatives also testified that in the event of a dispute regarding the primary contact of a ward committee RCO, their practice is to defer to the ward leader. They did not deviate from that practice here—when Ms. Bass disputed Plaintiff's RCO registration, the Planning Commission requested that she, as elected ward leader of the 22nd Ward Democratic Committee, confirm her choice of primary contact in writing. T.116:10-18. Ms. Bass did just that, and Ms. Cain was no longer the primary contact for the 22nd Ward Democratic Committee. Plaintiff's proposed reading of the regulations at issue would lead to an absurd result. Essentially, Plaintiff argues that because she was first to submit an application for RCO recognition of the 22nd Ward Democratic Political Committee—

which she indisputably admits she was not authorized to do—that only Plaintiff can authorize a

change of primary contact person. Plaintiff, thus, would hold the RCO function of an

organization for which she was never a decisionmaker hostage. But the regulations do not

provide that Plaintiff must "authorize" any change and, indeed, specifically state that an RCO

may change its contact information at any time. *See supra* at 12-13.

       2.     Defendants incorporate the response to paragraph 1 herein.

       3.     Plaintiff will not prevail on the merits because she cannot demonstrate state action

necessary to carry out her claims under 42 U.S.C. § 1983, and the First and Fourteenth

Amendments. Plaintiff concedes that she is not suing Ms. Bass in her official capacity as a

councilmember, but rather as a private individual. ECF No. 10, Am. Compl., caption & ¶ 2.

Regardless, the record shows that Plaintiff's dispute is internal to the 22nd Ward Democratic

Committee and with its leader Ms. Bass. Ms. Bass's selection of someone other than Plaintiff to

serve as the RCO contact person for the 22nd Ward Democratic Committee does not implicate

Ms. Bass's role on City Council, nor the City's action other than implementing a change in

contact that the organization requested, according to its regulations. For those reasons, the

authorities Defendants relied upon in their motion to dismiss are applicable to this matter; it is a

dispute within a private, political organization, into which this Court should not wade. *See, e.g.,*

*Barber v. Horsey*, Civil Action No. 91-4265, 1991 WL 258836 *2 (E.D. Pa. Dec. 3, 1991)

("[T]he internal affairs of a political party, specifically the filling of a party office, is not state

action; nor does it constitute action under color of state law."), *aff'd*, 972 F.2d 1330 (3d Cir.

1992) (citing *McMenamin v. Phila. Cty. Democratic Exec. Comm.*, 405 F. Supp. 998 (E.D. Pa.

1975)).  Plaintiff's misleading effort to conflate Ms. Bass's two roles does not change that.

Indeed, Ms. Bass testified that "absolutely" she "make[s] an effort to keep [her] councilperson

and ward leader roles separate," and provided that she does not involve herself in zoning matters in the 22nd Ward as ward leader given that as the 8th district councilmember, she is obligated to weigh in on them. T.64:20-22. In choosing the primary contact for the 22nd Ward Democratic Committee RCO, Ms. Bass was acting as ward leader only, making this precisely the type of local political dispute that does not involve state action. *See Moore v. Democratic Cty. Exec. Comm. Of Phila.*, Civil Action No. 14-3847, 2014 U.S. Dist. LEXIS 157182 (E.D. Pa. Nov. 6, 2014); *McMenamin v. Phila. Cnty. Democratic Exec. Comm.*, 405 F. Supp. 998, (E.D. Pa. 1975); *Lynch v. Torquato*, 343, F.2d 370, (3d Cir. 1965); *Barber v. Horsey*, Civil Action No. 91-4265, 1991 WL 258836 (E.D. Pa. Dec. 3, 1991), *aff'd*, 972 F.2d 1330 (3d Cir. 1992); *Acosta v. Democratic City Comm.*, 288 F. Supp. 3d 597 (E.D. Pa. 2018); *Max v. Republican Comm.*, 587 F.3d 198 (3d Cir. 2009).

4.    Defendants incorporate the response to paragraph 3 herein. By way of further response, the City's alleged action here is to name as the primary contact of an organization the person that the organization selected. While it evaluated the request against its Regulations and practices, it did nothing but institute exactly the change the private, political organization requested. In fact, refusing to recognize the organization's choice of primary contact or spokesperson may itself implicate First Amendment issues.

5.    Defendants incorporate the response to paragraph 4 herein.

6.    Representatives from the Planning Commission testified that under their regulations and policies, councilmembers do not have the authority to choose primary contacts for RCOs T.132:21-24. Instead, they made the requested change to contact information at the request of the leader of the organization registered as an RCO.

7.     Plaintiff has no liberty or property interest in the "primary contact" position for the 22nd Ward Democratic Committee RCO and adduced no evidence at the hearing that Plaintiff's removal from that position was motivated in any manner by Plaintiff's partisan political affiliation. Plaintiff was not a public employee and held no public office, nor is there any evidence that she was removed as "primary contact" for her political beliefs. The cases Plaintiff cites in support of her claim establish that it is a violation of the First Amendment to practice "patronage" in public employment, which requires public employees to "provide . . . support for the favored political party." *Elrod v. Burns*, 427 U.S. 347, 359-60 (1976); *see also Adams v. Gov. of Delaware*, 922 F.3d 166, 176 (3d Cir. 2019) (regarding a challenge to the requirement that judges in Delaware be a member of the Democratic or Republican parties), *vacated and remanded sub nom. Carney v. Adams*, 141 S. Ct. 493 (2020)). But here, the position of "primary contact" is not a "public" one—it is a position at a private organization. *See* Phila. Code § 14-303(11A) (providing for "Registered Community Organizations" and that the "Commission will only register an organization as an RCO if" it meets certain criteria); PCPC Regs., 12.3.1 (providing that "[o]rganizations shall apply for RCO registration"); 12.3.5.2 (organizations must provide "[t]he name of the organization's primary contact person"); 12.3.8 ("An RCO may submit a written request . . . to correct or update their registration information at any time.") (Nov. 2016). Plaintiff received no compensation or authority from the position of "primary contact." The Regulations do not confer any duty or authority on a primary contact person. The primary contact is nothing more than a point of contact. Moreover, Plaintiff and Ms. Bass are members of the same political party; there is no "patronage" claim here. Regardless of any alleged internal political rivalry, Plaintiff provided no evidence for political retribution of any kind on the part of Ms. Bass or the City. T.98:6-11; T.137:9-14. Plaintiff testified that she

was not prevented from participating in other RCOs, creating her own organization to register as an RCO, or from accessing public information or participating in public hearings regarding zoning matters. T.98:12-20. Those rights remain intact. There is no evidentiary support for Plaintiff's First Amendment claims and, thus, she is not likely to succeed on the merits of her claims.

8.    Defendants incorporate the response to paragraph 7 herein.

9.    Defendants incorporate the response to paragraph 7 herein.

10.    Defendants incorporate the responses to paragraphs 3-7 herein.

11.    Defendants incorporate the responses to paragraphs 3-7 herein.

12.    Defendants incorporate the responses to paragraphs 3-7 herein. In addition, there is no evidence of record that Ms. Bass has any "antagonism" or "retaliatory animus" towards Plaintiff—the evidence is simply that they have differing views within the private, political organization and were opponents in an organizational election.

13.    Preliminary injunctive relief is an "extraordinary remedy, which should be granted only in limited circumstances." *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merk Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002). That is particularly true where, as here, Plaintiff is requesting a mandatory injunction to change, not preserve, the status quo. To obtain a preliminary injunction, the plaintiff must demonstrate (1) a significant risk of irreparable harm and (2) a substantial likelihood of success on the merits. *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017). "[W]here the relief ordered by the preliminary injunction is mandatory and will alter the status quo, the party seeking the injunction must meet a higher standard of showing irreparable harm in the absence of an injunction." *Bennington Foods LLC v. St. Croix Renaissance, Group, LLP*, 528 F.3d 176, 179 (3d Cir. 2008) (citation omitted). The

absence of either of these factors precludes injunctive relief. *Hoxworth v. Blinder, Robinson & Co., Inc.*, 903 F.2d 186, 197 (3d Cir. 1990). If the moving party carries this threshold burden, the court must then balance the equities and consider "the possibility of harm to other interested persons . . . [and] the public interest." *Reilly*, 858 F.3d at 179 (citation omitted); *see Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (urging careful consideration of "the public consequences in employing the extraordinary remedy of injunction"). Plaintiff has failed to establish either irreparable injury or a substantial likelihood of success on the merits. Nor do the equities or the public interest favor granting extraordinary injunctive relief. Accordingly, Plaintiff's motion for a preliminary injunction must be denied.

14.     Defendants incorporate the response to paragraph 13 herein.

15.     Defendants incorporate the responses to paragraphs 1-13 herein. Those conclusions establish that Plaintiff is not likely to succeed on the merits of her claims in this matter.

16.     To be entitled to the extraordinary remedy of a preliminary injunction, a plaintiff must show an imminent risk of irreparable injury that cannot wait to be redressed until trial is over. *Hynoski v. Columbia Cnty. Redevelopment Auth.*, 485 F. App'x. 559, 563 (3d Cir. 2012). Plaintiff's sole contention on the irreparable harm point is that she allegedly suffered a First Amendment injury. Specifically, in her declaration attached to her motion, Plaintiff states that "she had no ability to communicate with, or received information from developers," and was "deprived of the ability to engage in the process intended for RCOs to be active in the participants in the land development process." ECF No. 15-2, Decl. of Cain, ¶¶ 46, 47. Based on the record, this is inaccurate—Plaintiff is not foreclosed from participating in the RCO process in any number of ways.

First, Plaintiff can establish her own non-ward committee organization, register it as an RCO, and name herself the primary contact. Under the Philadelphia Zoning Code, three categories of organizations can register for RCO status: (1) Volunteer Organization/Civic Assoc./PA Nonprofit/Unincorporated Association/Other, (2) Neighborhood Improvement District (NID)/Special Services District (SSD), and (3) Ward Committee. Phila. Code § 14-303(11A)(a)(.1). Although Plaintiff is not the ward leader of a ward political committee and likely does not qualify as an NID or SSD, she still may pursue option (1), and there is no evidence demonstrating why she could not do so. In fact, Plaintiff testified that "no," she was not told that she could not form her own organization and register it as an RCO. T.98:18-20. Likewise, Ms. Bass testified that she would have no objection to Plaintiff doing so. T.71:23-72:1. And even if Ms. Bass did object, Mr. Goins testified that she lacks the authority to intervene in other RCOs. T.132:21-24.

Second, Plaintiff can participate in other active RCOs. There are non-ward committee RCOs that are active within the confines of the 22nd Ward, including East Mt. Airy Neighbors, West Mt. Airy Neighbors, and Cliveden Hills Neighborhood Association. T. 43:11-18; T.62:9-17. In her declaration, Plaintiff stated that she was refused "material" at a single RCO meeting, but neither a City representative nor Ms. Bass were present, nor did Plaintiff testify that anyone at the meeting was acting on behalf of Ms. Bass or the City. *See* ECF No. 15-2, Decl. of Cain, ¶ 40; *see* T.98:15-17. There is no evidence that Plaintiff was in any way foreclosed from joining these organizations, attending meetings of these organizations, and being actively engaged in development issues within the 22nd Ward through these organizations. In fact, Plaintiff testified "no" when asked if she was told she could not attend an RCO meeting. T.98:15-17.

Third, Plaintiff has access to zoning information regarding land developments because it

30

is all publicly available, and zoning board hearings are open to the public for comment and participation. Nothing in the record establishes that being a primary contact of an RCO is anything more than being a conduit for streamlined zoning information that is already publicly available. Plaintiff is free to use the publicly available information and public forum to express her opinion to the zoning board in any manner she wishes. T.135:8-136:25; T.159:1-6. Because Plaintiff cannot establish either—let alone both—of the gateway factors for injunctive relief, the Court should deny the request for preliminary injunction.

Moreover, the primary purpose of a preliminary injunction is to preserve the status quo pending a determination on the merits. *See Anderson v. Davila*, 125 F.3d 148, 156 (3d Cir. 1997). Because Plaintiff is not currently serving as the primary contact for the 22nd Ward Democratic Committee RCO, issuing a preliminary injunction now would serve only to alter the status quo by removing Christine Foster as the primary contact. This is yet another factor that weighs against the issuance of the requested preliminary injunction.

17.     Defendants incorporate the response to paragraph 16 herein.

18.     Defendants incorporate the response to paragraph 16 herein.

19.     "The last two factors in the preliminary injunction analysis are whether 'the balance of the equities tips in [the plaintiff's] favor, and [whether] an injunction is in the public interest.'" *City of Philadelphia v. Sessions*, 280 F. Supp. 3d 579, 657 (E.D. Pa. 2017) (citing *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008)). Where the Government is a party, the last two factors in the preliminary injunction analysis merge. *Id.* (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

Both the balancing of the harms and the public interest weigh decisively against an injunction that would elevate the interests of one disgruntled ward committeeperson over the

elected ward leader's efforts to responsibly represent the ward, and the PCPC's effective

administrative and regulatory functions. At bottom, this is an intra-ward dispute.

Plaintiff spends a few sentences generally contending that "there is no other interested

person who will be harmed by [Plaintiff's] reinstatement," and that the vindication of Plaintiff's

First Amendment rights is in the public interest. ECF No. 15-1, Mot. for Prelim. Inj., 12; ECF

No. 35, Prop. Concls. of Law, 27, ¶¶ 19-20. The brevity and substantive deficiency of Plaintiff's

arguments on the third and fourth prongs of the preliminary injunction analysis indicate that

Plaintiff realizes how unconvincing her argument is.

      Plaintiff is plainly the only party to this action who does not have any harm to balance.

Ms. Bass has an interest in fulfilling her duties and responsibilities as the elected leader of the

22nd Ward Democratic Committee. To do so requires her ability to exercise discretion as to the

activities of the committee, which includes whether the committee will be registered as an RCO,

which she chose not to do, and who will speak for the committee if it does become registered.[3]

The grant of an injunction would override that discretion, harming Ms. Bass' ward leadership,

and the elected members of the 22nd Ward Democratic Committee that chose Ms. Bass as ward

leader. The City has an interest in the proper and efficient administration of the RCO process

pursuant to the PCPC's interpretation of the Code and Regulations. As discussed in detail above,

Plaintiff was afforded sufficient process by the PCPC pursuant to its practices. An injunction

would harm the City by burdening this established procedure for RCO primary contact disputes.

To require more process is not only unnecessary given that PCPC has a mechanism to handle

---

[3] Ms. Bass testified as to why she, as ward leader, did not seek RCO registration of the 22nd Ward Democratic Committee: "There were a number of other RCOs [] that were already operating in the community. They were doing a great job. There was no need to duplicate efforts . . .there was no immediate need to bring forth another RCO when we already had some really good ones." T.59:17-60:7.

situations like this —going to organization leadership—but would significantly burden this bureaucratic activity. By contrast, Plaintiff was not and is not the leader of 22nd Ward Democratic Committee, the organization she registered for RCO status. Plaintiff's desire to represent the 22nd Ward Democratic Committee in a capacity she does not have the authority or authorization for is not a legally redressable interest, let alone one that outweighs the interest of the Defendants in the efficient operation of the RCO process and recognition of ward leader authority. Moreover, as discussed above, Plaintiff may continue to participate in development matters.

Additionally, no public interest is served by allowing a malcontent committeeperson to fraudulently submit an RCO application and purport to speak on behalf of a ward political committee without ward leader authorization—something the federal courts are expressly prohibited from addressing anyway. Indeed, the public interest is best served by the mechanism already put in place by the PCPC—in the event of a disputed primacy contact, looking to the organization itself and its leadership, in the case of a ward political committee, the ward leader, to select its primary contact to serve as the conduit for information throughout the RCO process, and to change that primary contact when the organization so desires.

20.    Defendants incorporate the response to paragraph 19 herein.

21.    Defendants incorporate the responses to paragraphs 1-20 herein. Defendants deny that Plaintiff is entitled to any relief or has established that nominative security it appropriate.

22.    Defendants incorporate the response to paragraph 1-21 herein.

23.    Defendants incorporate the responses to paragraphs 1-22 herein.

DATE: November 7, 2022                    Respectfully submitted,

**SCHNADER HARRISON SEGAL & LEWIS LLP**

*/s/ David Smith*
David Smith (Pa. I.D. 21480)
Layal A. Issa (Pa. I.D. 329214)
1600 Market Street, Suite 3600
Philadelphia, PA 19103-7286
(215) 751-2190
dsmith@schnader.com
lissa@schnader.com

*Attorneys for Cindy Bass*

**CITY OF PHILADELPHIA LAW DEPARTMENT**

*/s/ Ryan B. Smith*
Benjamin H. Field (Pa. I.D. 93045)
Ryan B. Smith (Pa. I.D. 324643)
1515 Arch Street, 15th Floor
Philadelphia, PA 19102
Phone:  (215) 683-2954
benjamin.field@phila.gov
ryan.smith@phila.gov

*Attorneys for the City of Philadelphia*

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| CARLA CAIN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | No. 2:22-cv-360-CFK |
| CINDY BASS | : | |
| | : | |
| and | : | |
| | : | |
| CITY OF PHILADELPHIA, | : | |
| | : | |
| Defendants. | : | |

## CERTIFICATE OF SERVICE

I, Ryan B. Smith, hereby certify that the foregoing document titled "Response to Plaintiff's Proposed Findings of Fact and Conclusions of Law" has been filed electronically and is available for viewing and downloading from the ECF system by all counsel of record pursuant to Local Rule 5.1.2(8)(b).

DATE: November 7, 2022

Respectfully submitted,

*/s/ Ryan B. Smith*
Ryan B. Smith
Assistant City Solicitor