IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARLA CAIN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| CINDY BASS, a Member of | : | No. 2:22-cv-00360-CFK |
| Philadelphia City Council, | : | |
| in her personal capacity only, | : | |
| | : | |
| and | : | |
| | : | |
| CITY OF PHILADELPHIA, | : | |
| | : | |
| Defendants. | : | |

**Plaintiff Carla Cain's Post-Hearing Brief in Support of Motion for Preliminary Injunction**

Plaintiff Carla Cain by undersigned counsel files this post-hearing brief in support of her motion for preliminary injunction (ECF Doc. #15) and in opposition to the joint brief of Defendants Cindy Bass and City of Philadelphia (ECF Doc. #36). Cain incorporates by reference her previously filed proposed findings of fact and conclusions of law. See ECF Doc. #35.

## Introduction

Defendants apply a fundamentally wrong constitutional paradigm to the case before the Court. In conflating the rights to speech and association secured by the First Amendment with substantive and procedural due process rights secured by the Fourteenth Amendment, Cindy Bass and the City of Philadelphia (individually "Bass" or "the City" and collectively "Defendants") create a straw man to argue that Carla Cain ("Cain") has not stated a claim under the First or Fourteenth Amendments.

As explicated *infra*, the Fourteenth Amendment's guarantee of "liberty" incorporates as against the States the First Amendment rights of free speech and political association, and defendants have indeed violated Cain's First Amendment rights as secured by the Fourteenth Amendment's "liberty" guarantee. Separately, however, the City's final decisionmakers have also denied procedural due process to Cain by removing her from office in the absence of authority under City ordinance or regulation. This removal was undertaken both in knowing acquiescence with the political retaliatory motivation of Councilwoman Bass *and* without authority in law. The City's decisionmakers knew Bass's motivations and in fact *coached* Bass on how to re-submit her initial request to the City, with Jonathan Goins suggesting she should do so with her "ward leader hat on." See N.T. 49, lns. 11-14; Jt. Ex. 13 (Bass 000009); N.T. 127, lns. 15-17. There is consequently no defect in Cain's request for preliminary injunction: the evidence at the hearing established actionable First Amendment retaliation as well as a denial of Fourteenth Amendment procedural due process through the lawlessness of Cain's removal.

Thus, a First Amendment claims lie both against Bass to prevent further efforts at retaliation against Cain for protected speech and political association or activity and against the City for its decisionmakers' knowing and concerted effectuation of Bass's retaliatory motivation to remove Cain. Additionally, however, a Fourteenth Amendment claim lies against both defendants for their concerted action in removing Cain from office in violation of Cain's procedural due process rights, irrespective of any party's motivation therefor. That is because such removal was effectuated without authority under City ordinance or regulation.

Cain's two-fold request relief is thus proper: a mandatory injunction compelling the City's reinstatement of her to the position of primary contact of the 22nd Ward Democratic RCO, which she held prior to her summary removal, and a prohibition directed to Bass to prevent her

from undertaking further retaliatory efforts to employ the machinery of City government to interfere with Cain's lawful, continued occupancy of such position.

**I.     Defendants City and Bass retaliated against Cain for her exercise of her First Amendment rights to speech and political association.**

To establish a retaliation claim under the First Amendment, a plaintiff must prove the following,

> (1) constitutionally protected conduct,
> (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and
> (3) a causal link between the constitutionally protected conduct and the retaliatory action.

*Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (quoting *Mitchell v. Horn,* 318 F.3d 523, 530 (3d Cir. 2003)).

**A.     Cain engaged in constitutional protected speech and association.**

"Speech on public issues occupies the highest rung of the hierarchy of First Amendment values[.]" *Connick v. Myers*, 461 U.S. 138, 145 (1983). "Political speech is 'central to the meaning and purpose of the First Amendment.'" *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 329 (2010). Speech is political when one engages in discussions of public issues, advocates for political reform, or seeks support for causes or for particular views on issues political in nature. See *Buckley v. Valeo*, 424 U.S. 1, 14 (1976) (per curiam). "Such political expressions are crucial to self-government and are afforded broad protection in order to safeguard 'the ability of the citizenry to make informed choices…' and 'assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'" *Republican Party of Pennsylvania v. Cortés*, 218 F. Supp. 3d 396, 415 (E.D. Pa. 2016) (quoting *Roth v. United States*, 354 U.S. 476, 484 (1957)).

Bass and Cain have been political opponents in various capacities over time. Cain has spoken up and criticized Bass in public, N.T. 24, lns. 4-6, has questioned Bass's transparency, N.T. 24, lns. 7-10, and has run against Bass for leadership of the local Democratic ward. N.T. 25, lns. 1-7; see also ECF Doc. #30 (Joint Stipulated Facts of the Parties), p. 1, ¶¶ 4, 5. Bass deemed Cain not to be a good "partner" to lead the RCO, N.T. 28, lns. 18-23, so between September 16, 2019, and October 13, 2021, Bass made multiple communications to the City requesting that Ms. Cain be removed as primary contact of the RCO, including by communications made through Bass's council staff members, Christian Matozzo and Charles L. Richardson. ECF Doc. #30, p. 2, ¶ 13. In this regard Bass asked that Christine Foster and Dominic Mathis be installed as replacements for Cain. N.T. 28, ln. 18 – 29, ln. 3.

Ultimately, Bass succeeded in installing Foster as her replacement for Cain, having taken action against Cain because of her speech and political activities against her.

**B.  Defendants' removal of Cain from her position is sufficient to deter a person of ordinary firmness from exercising her First Amendment rights to speech and political association.**

"[T]he key question in determining whether a cognizable First Amendment claim has been stated is whether 'the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights.'" *McKee v. Hart,* 436 F.3d 165, 170 (3d Cir. 2006) (quoting *Suppan v. Dadonna,* 203 F.3d 228, 235 (3d Cir. 2000)); see also *Crawford–El v. Britton,* 523 U.S. 574, 589 n.10 (1998) ("The reason why such retaliation offends the Constitution is that it threatens to inhibit exercise of the protected right.") (citation omitted).

Here, there can be no question that a person of ordinary firmness would be deterred by defendants' actions: Cain was removed from her position as primary contact person, thereby

4

suffering a significant personal harm for which she seeks redress in this suit. A primary contact person for an RCO can play many significant roles in the land development process, N.T. 144, lns. 20-21. Once installed in such position, Cain was not properly removed.

> **C. There is a clear causal link between defendants' removal of Cain from her position and her First Amendment protected conduct.**

To establish a causal connection between constitutionally protected conduct and retaliatory action, a plaintiff must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. See *Woodson v. Scott Paper Co.,* 109 F.3d 913, 920–21 (3d Cir. 1997); *Krouse v. American Sterilizer Co.,* 126 F.3d 494, 503–504 (3d Cir. 1997).

The proximity between Cain speaking against Bass and being removed from her position as primary contact for the RCO is self-evident. Bass employed the powers of her official office as councilperson to try to effectuate such removal *over a two-year period*. As the parties have stipulated,

> Between Sept. 16, 2019, and Oct. 13, 2021, Ms. Bass made multiple communications to the City Planning Commission requesting that Ms. Cain be removed as primary contact of the RCO, including by communications made through Bass's council staff members, Christian Matozzo and Charles L. Richardson.

ECF Doc. #30, p. 2, ¶ 13.

A two-year sustained effort to remove Cain unequivocally shows a pattern of antagonism sufficient to establish a causal nexus. See *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997) (circumstantial evidence of "pattern of antagonism" following the protected conduct can give rise to the inference) (citing *Robinson v. Southeastern Pa. Transp. Auth.,* 982 F.2d 892, 895 (3d Cir. 1993)).

Bass's removal of Cain from office was ultimately successful because of the cooperation of the City's decisionmakers, Jonathan Goins and Eleanor Sharpe, with the City's staff itself apparently filling out the application form for Christine Foster, Bass's chosen replacement. See N.T. 165, ln. 10 – p. 167, ln. 12. Additionally, Foster never even read the city-run website governing RCOs. N.T. 163, lns. 24 – p. 164, ln. 1. Clearly, Bass's replacement of Cain was politically motivated, as Bass failed to replace Cain with someone who had genuine interest in taking the job as primary contact at the RCO. Foster didn't even fill out the required form to apply for the position! See N.T. 166, ln. 6 – p. 168, ln. 7 (Foster testifying *inter alia*, "I didn't fill out any application.").

Cain, having engaged in constitutionally protected conduct in opposition to Bass, was removed by Bass working in coordination with the City.

**II.    Defendants misapprehend application of the Fourteenth Amendment to this case, but the record establishes a procedural due process violation.**

The Fourteenth Amendment has various applications, and the Amendment's specific application to the present case is outlined below.

**A.    Substantive Due Process is inapposite, because Cain's enumerated First Amendment rights have been violated.**

Defendants make a correct argument against application of the Fourteenth Amendment's protection of substantive due process. Cain agrees that she has no substantive due process claim in this case. That is because she has a clear First Amendment claim in the protection of her speech and political association, as well as procedural due process protections against her unlawful removal from office.

"The Supreme Court has recognized an independent § 1983 action for retaliatory termination in violation of the First Amendment[.]" *Nicholas v. Pennsylvania State Univ.*, 227

F.3d 133, 143 n.3 (3d Cir. 2000) (citing *Mount Healthy Board of Education v. Doyle,* 429 U.S. 274 (1977). "[C]laims governed by explicit constitutional text may not be grounded in substantive due process." *Id.* (citing *Torres v. McLaughlin,* 163 F.3d 169, 172 (3d Cir. 1998); *Sabatini v. Reinstein,* 76 F.Supp.2d 597, 598–99 (E.D. Pa. 1999) (First Amendment claim does not implicate substantive due process)).

Because Cain sues under the First Amendment, substantive due process has no application to the case at hand. A claim for procedural due process is a separate claim.

> **B.     The evidence establishes a Fourteenth Amendment procedural due process denial, because defendants' actions were without authority in law, ordinance or regulation.**

The Fourteenth Amendment's Due Process clause incorporates the First Amendment's protection of speech and political association and applies such individual rights against the States. As this Court has recently stated, "The fundamental concept of liberty embodied in th[e Fourteenth] Amendment *embraces* the liberties guaranteed by the First Amendment." See *Stilp v. Borough of West Chester*, CV 21-3989, 2022 WL 3722082, at *9 (E.D. Pa. Aug. 29, 2022) (citing *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940)) (italics added) (further citation omitted). Further, "the First Amendment [is] protected against state action by the Fourteenth." *NAACP v. Button*, 371 U.S. 415, 428 (1963). Thus, with respect to a retaliation claim, the First Amendment is the source of rights, and the Fourteenth Amendment applies the First Amendment's rights to state actors. See, e.g., *Cantwell*, 310 U.S. at 303 ("The First Amendment declares that Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof … The Fourteenth Amendment has rendered the legislatures of the states as incompetent as Congress to enact such laws.").

But in addition to the Fourteenth Amendment's incorporation of the protections of the First Amendment rights against the States, it also demands that rights not be stripped without due process of law.  "The Fourteenth Amendment of the Constitution forbids a state from depriving persons of life, liberty, or property without due process of law." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) (citing U.S. Const. amend. XIV, § 1).  When a plaintiff sues under 42 U.S.C. § 1983 for a state actor's failure to provide procedural due process, courts employ a two-stage analysis "inquiring (1) whether the asserted individual interests are encompassed within the fourteenth amendment's protection of life, liberty, or property; and (2) whether the procedures available provided the plaintiff with due process of law." *Id.* (quoting *Robb v. City of Philadelphia,* 733 F.2d 286, 292 (3d Cir. 1984)) (cleaned up).

There can be no question that Carla Cain's procedural due process rights were denied here.  As noted, First Amendment rights are not only embraced within the "liberty" protection of the Fourteenth Amendment, thereby protecting citizens against retaliation for the exercise thereof, as Jonathan Goins admitted in his testimony, Cain's removal from her position on the City's rolls was not undertaken pursuant to *any* actual ordinance or regulation.  N.T.  110, ln. 18 – p. 111, ln. 11; see also N.T. 151, lns. 22-24 (Eleanor Sharpe agreeing).  In other words, Cain's removal was at best lawless, even if not found to have been motivated by Bass's retaliatory animus.  There was not just an absence of *due* process, there was *no* process followed in any ordinance or regulation by which Cain was removed from her position.

Regardless of the existence of such retaliatory animus, Cain's liberty interest in occupying the office of primary contact person free from arbitrary, lawless removal is independently actionable because she was given no process through which to contest her

removal, a *per se* violation of procedural due process.  See *Carey v. Piphus*, 435 U.S. 247, 266 (1978) ("right to procedural due process is 'absolute'").

**III.     *Monell* liability is established; the highest policymakers in the City for issues involving the recognition of RCO primary contacts, Jonathan Goins and Eleanor Sharpe, specifically acted to remove Cain, making the City a proper defendant in Cain's suit to reverse her wrongful removal.**

For purposes of municipal liability under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694 (1978), "[p]olicy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (quoting *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1480 (3d Cir. 1990) (in turn quoting *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481 (1986))).

Here, Jonathan Goins, a member of the City of Philadelphia Planning Commission and the RCO Coordinator with the department and Eleanor Sharpe, who serves in a dual capacity as head of the Philadelphia Planning Commission and Deputy Director of the City's Department of Planning and Development, jointly made the final decision regarding Cain's status as primary contact within the RCO.  N.T. 148, lns. 17-25; 149, ln. 18 – 150, ln. 12.  Goins and Sharpe both maintain authority that may be fairly be said to represent official policy.  Goins testified that he removed Cain and replaced her with Foster as the primary contact.  N.T. 137, lns. 1-8.  Sharpe described herself as the "final arbiter" of any dispute regarding RCOs.  N.T. 148, lns. 24-25.  Sharpe expressly authorized Goins' removal of Cain from the City's roll of RCO primary contacts. N.T. 150, lns. 1-11; Jt. Ex. 12 (City 000087).

"Municipalities are equally answerable for actions undertaken by their final policymakers, whether or not those actions conform to their own preexisting rules." *Simmons v. Uintah Health Care Special Dist.*, 506 F.3d 1281 (10th Cir. 2007) (Gorsuch, J.).  In *Simmons*, the

9

Tenth Circuit dealt with a wrongful termination suit pursuant to municipal policy.  Then-Circuit Judge Gorsuch, writing for the Court said, "While *Monell* found liability on the basis of an 'official policy as the moving force of the constitutional violation,' *Monell*, 436 U.S. at 694 'the Court in *Pembaur*…establish[ed] that actions taken by a municipality's final policymakers also represent acts of 'official policy' giving rise to municipal liability.'"  *Simmons*, 506 F.3d at 1285 (quoting *Pembauer v. City of Cincinnati*, 475 U.S. 469, 470 (1986)).

       Goins testified plainly that "there *isn't* any – a specific provision in our regulations or the zoning code that addresses this specific situation where there's a – someone contests a change to the primary contact.  *However, we acted based on our best understanding of our authority and past practice* that we had done in similar situations."  N.T. 111, lns. 6-11 (italics added).  Thus, Goins unequivocally invoked the authority and practices of his office and those of Sharpe in seeking to justify Cain's removal.

       There is no higher authority within the City of Philadelphia hierarchy that Cain could have appealed to in her dispute with Bass.  Goins and Sharpe were the final decisionmakers who held the final say, represented official policy within the City, and caused Cain's deprivation of First Amendment rights by removing her from office, thus establishing *Monell* liability.  They are the "decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict."  *Bielevicz*, *supra*.

**IV.**    **Bass is Properly Sued Under Section 1983**

       "Anyone whose conduct is 'fairly attributable to the State' can be sued as a state actor under § 1983."  *Filarsky v. Delia*, 566 U.S. 377, 383 (2012) (quoting *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937 (1982)).  Where a private party is a "willful participant in joint action

10

with the State or its agents[,]" it can be said to be a joint actor. *Pugh v. Downs*, 641 F. Supp. 2d 468, 472 (E.D. Pa. 2009) (citing *Lugar,* 457 U.S. at 941 (1982)).

The "joint action" test for private party liability under Section 1983 requires courts to "examine whether state officials and private parties 'acted in concert' in effectuating a deprivation of constitutional rights." *Pugh,* 641 F. Supp. 2d at 472–73 (E.D. Pa. 2009) (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150 (1970) (finding state action where private party and state official conspired to violate plaintiff's equal protection rights); *Collins v. Womancare,* 878 F.2d 1145, 1154 (9th Cir. 1989) (finding no state action where state official used independent judgment, rather than the judgment of a private party, in issuing citations to protesters violating preliminary injunction); *Howerton v. Gabica,* 708 F.2d 380, 385 (9th Cir. 1983) (finding state action based on police intervention at "every step" of eviction)).

Here, Bass is a member of Philadelphia City Council. She initially tried in such capacity to remove Cain. Then, when the City balked at this request appearing to be coming from a public official, the City coached her to re-submit her request for Bass's removal with her "ward leader hat" on as a putatively private actor. This, according to the City would "***avoid appearances*** of council choosing contacts for RCOs even though it makes sense in this particular case." See Jt. Ex. 13 (Bass 000009) (emphasis and italics added). And when Bass did this, the City responsively took action to remove Cain, even in the absence of an ordinance or regulation allowing such removal. See N.T. 151, ln. 14 – p. 151, ln. 3 (Sharpe testifying "no ordinance or regulation that specifically determined" how and when a change should be made upon such a request).

So the City and Bass coordinated a two-step dance for "appearances."

11

This was classic concerted action. Bass is consequently a proper target of relief for the violations of Cain's constitutional rights, including a prohibitory injunction to prevent further action in concert with the City to again deprive Cain of the office she rightly holds. The Court need not accept a facile argument that the magical donning of a ward leader "hat" to effectuate the exact same result Bass had sought as councilperson somehow puts Bass's actions outside the scope of relief available under Section 1983, especially when her staffers were intimately involved in the history of the event. See ECF Doc. #30, ¶ 13 (multiple contacts by Bass's staff members with City over two year period); N.T. 45, lns. 22-25; Jt. Ex .13 (Bass 000011) (Goins sending email to Bass's Councilperson staffer, Charles Richardson, referring to appeal email from Cain, stating "She represents the 22nd Ward Democratic Committee. How can this issue be resolved?"); N.T. 49, lns. 12-15; Jt. Ex. 13 (Bass 000009) (email sent by Richardson to Bass stating, "Jonathan [Goins] asked that we now supply a letter from you with your 'ward leader hat on.' on behalf of the Ward, asking for Christine to be listed as primary contact and as committee chair. According to him, this will finally solve the issue. *They want to avoid appearances of council choosing contacts for RCOs even though it makes sense in this particular case.*") (italics added); N.T. 59, lns. 2-3 (Bass testifying that her staff spoke for her in interacting with Goins); N.T. 124, ln. 21 - 125, ln. 1 (Richardson emailing Goins, and then Bass sending letter to Goins, requesting change to the primary contact of the RCO be made in late 2021).

**V.      All elements necessary for issuance of an injunction have been met.**

    **A.      Cain is likely to prevail on the merits of her claims.**

As explicated *supra*, Bass sought to remove Cain because of Cain's political speech and associations. And this was done in violation of Cain's rights under the First and Fourteenth

Amendments, being both retaliatory and without basis in ordinance or regulation.  The defendants acted in concert, and they are both proper objects of injunctive relief.

    **B.**     **Denial of the right to hold office is irreparable harm with no immediate remedy.**

"[T]he violation of a fundamental right, such as one's First Amendment freedoms, 'for even minimal periods of time unquestionably constitutes irreparable injury.'" *Swartzwelder v. McNeilly,* 297 F.3d 228, 241 (3d Cir. 2002) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion)) (citing *Abu–Jamal v. Price,* 154 F.3d 128, 136 (3d Cir. 1998))).  Injunctive relief is "clearly appropriate" where "First Amendment interests [are] either threatened *or in fact being impaired* at the time relief [i]s sought." *Stilp v. Contino*, 613 F.3d 405, 409, n.4 (3d Cir. 2010) (quoting *Elrod*, *supra*, 427 U.S. at 373) (italics added).

Cain desires to exercise her right to be the primary contact person for the RCO, as she was so recognized by the City prior to her illegal removal.  Under the City's ordinances, she lawfully qualified for such role.  However, Bass, acting in concert with the City's highest decisionmakers overseeing RCOs (Goins and Sharpe) effectuated Cain's removal, with the City even coaching Bass to put her "ward leader hat on" to effectuate Cain's removal.  See N.T. 49, lns. 11-14; Jt. Ex. 13 (Bass 000009); N.T. 127, lns. 15-17.  A mandatory injunction should issue to remedy Cain's retaliatory removal, and a prohibitory injunction should issue to restrain Bass from further wrongdoing vis-à-vis Cain's right to hold her RCO position.  Cain's right to hold the primary contact position is "threatened [and] in fact being impaired" by both defendants' actions.  *Stilp*, *supra*.  No remedy at law can cure Cain's First Amendment injury nor give her the prospective relief she seeks.  See *Ne. Pa. Freethought Soc'y*, 938 F.3d 424, 442 (3d Cir. 2019) (First Amendment violation not remediable by monetary damages) (citing *Elrod,* 427 U.S. at 347).

**D.     There will be no harm to other interested persons.**

It is beyond dispute that Cain was the original holder of the RCO office as primary contact person. Inasmuch as no other person has been lawfully appointed to such office, there is no other interested person who will be harmed by her reinstatement, nor by an order restraining Bass from again attempting to remove Cain improperly. Cain's removal was clearly without authority under City ordinances or regulations, and thus no other party – whether Christine Foster or otherwise – can assert harm. Foster's tenure in office was illegal *ab initio*.

As Foster testified at the time of hearing, she did not even complete the application to serve in the role of primary contact person, but rather only gave information to the City's overseer, Jonathan Goins for such purpose. See N.T. 166, ln. 6 – p. 168, ln. 7. Additionally, Foster never even read the city-run website governing RCOs. N.T. 163, lns. 24 – p. 164, ln. 1. Nor has Foster taken any action in the role of primary contact person since her illegitimate appointment. N.T. 164, lns. 2-17. Clearly, Cain's replacement was the result of joint action by the defendants.

**E.     The public interest favors issuance of a preliminary injunction.**

A district court "in considering whether to grant a preliminary injunction, should take into account, when [] relevant . . . the public interest." *Reilly*, 858 F.3d 173, 176 (3d Cir.), *as amended* (June 26, 2017). "As a practical matter, if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff." *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 n.8 (3d Cir. 1994).

"[T]he public interest favors preliminary injunctive relief when a plaintiff has demonstrated both a likelihood of success on the merits and irreparable harm." *Pennsylvania*

*Prof'l Liab. Joint Underwriting Ass'n v. Wolf*, 328 F. Supp. 3d 400, 411 (M.D. Pa. 2018) (citing *Johnson v. Wetzel*, 209 F. Supp. 3d 766, 781 (M.D. Pa. 2016) (Conner, C.J.) (collecting cases)). "This interest is particularly strong when the right at issue derives from the Constitution itself." *Id*.

The public interest favors Cain's restoration and ongoing protection from improper removal from her position.

### F. Any bond should be nominal.

Inasmuch as actual pecuniary interest are not at stake in this case, but rather the protection of constitutional rights, Cain proposes nominal bond of one hundred dollars ($100) to secure the preliminary injunction she seeks. See *Schrader v. Sunday*, ___ F.Supp.3d ___, 2022 WL 1542154 (M.D. Pa. May 16, 2022) (preliminarily enjoining provision of Child Protective Services Law upon posting $100 with court); *Stilp v. Contino*, 629 F.Supp.2d 449 (M.D. Pa. 2009), *aff'd* 613 F.3d 405 (3d Cir. 2010) (preliminarily enjoining provision of Public Official and Employee Ethics Act upon posting $250 with court).

**Conclusion**

RCOs give recommendations to the Zoning Board of Adjustment, N.T. 159, lns. 14-19. A primary contact person for an RCO can play many roles in the land development process. N.T. 144, lns. 20-21.

Cain originally became interested in the RCO position in 2019 in order to be involved in issues of public importance in her community. N.T. 77, lns. 3-5. In addition to her own interest, other like-minded individuals approached her to share their views regarding developments in their community. N.T. 77, lns. 13-18.

Cain's First and Fourteenth Amendment rights have been violated by her retaliatory removal from office that was done without authority in ordinance or regulation. An injunction should against the City issue to restore Cain to her position. Bass's role as member of City Council obviously influenced the City to take action not authorized under governing ordinance and regulation. Accordingly, an injunction also properly issues to prevent ongoing interference by Bass with Cain's occupancy of such position after restoration.

WHEREFORE, Plaintiff Carla Cain prays the Court to ORDER Defendant City of Philadelphia to REINSTATE her to the position of primary contact person for the 22nd Ward Democratic Committee RCO and further PRELIMINARILY ENJOIN Defendant Cindy Bass from undertaking any action in the nature of attempting to remove Cain from such position, both pending further order of this Court.[1]

                                               Respectfully submitted,

**METTE, EVANS & WOODSIDE**

By: _____
Aaron D. Martin
Pa. Atty. I.D. 76441
Sarah E. Straub
Pa. Atty. I.D. 330748
3401 North Front Street
Harrisburg, PA 17110
Phone: 717-232-5000
admartin@mette.com

**Law Offices of John S. Carnes, Jr.**

By: /s/ John S. Carnes, Jr.
John S. Carnes, Jr.
Pa. Atty. I.D. 47338
101 Main Street
Parkesburg, PA 19365
Phone: (610) 857-5500
jscarnes@jcatty.com

*Attorneys for Plaintiff,
Carla Cain*

Dated: November 7, 2022.

---

[1] A proposed order has previously been filed with the Court. *See* ECF Doc. 15-3.