## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CARLA CAIN,** | : | **CIVIL ACTION** |
| *Plaintiff*, | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CINDY BASS,** | : | **NO. 2:22-cv-00360-CFK** |
| | : | |
| **and** | : | |
| | : | |
| **CITY OF PHILADELPHIA** | : | |
| *Defendants*. | : | |

## <u>MEMORANDUM</u>

**KENNEY, J.**                                                    **December 5, 2022**

### I.      INTRODUCTION

Before the Court is Plaintiff Carla Cain's Motion for Preliminary Injunction. ECF No. 15. Plaintiff seeks to restore her position as primary contact for the 22nd Ward Democratic Committee Registered Community Organization ("the RCO") and asks the Court to enjoin Defendants Cindy Bass, elected leader of the organization registered, and the City of Philadelphia from attempting to remove her as primary contact and from interfering with or preventing performance of her duties as primary contact. ECF No. 43 ¶¶ 76 (a-d), 79 (a-d), 85 (a-d), 88 (a-d). Plaintiff requests injunctive relief pursuant to her claims of unlawful retaliation in violation of rights to free speech and political association (Counts I and II) and retaliatory removal from official position without procedural due process (Counts III and IV). *See Id*. ¶¶ 69-88.

Plaintiff claims that Ms. Bass used the influence of her position as councilperson to conspire with the City to oust Ms. Cain as primary contact in retaliation for political speech and

1

activities. However, the record shows that the Philadelphia City Planning Commission ("PCPC") followed standard office practice, in defaulting to organization leadership to resolve the issue, and extended ample due process to both Ms. Cain and the 22nd Ward Democratic Committee in their review of the matter.

The Court permitted targeted discovery in advance of a hearing on the Motion for Preliminary Injunction. ECF No. 24. The hearing was held on September 13, 2022. ECF No. 32. Upon consideration of the testimony and evidence presented at the hearing and the parties' thorough briefing of the issues, the Court denies Plaintiff's motion for preliminary injunction. The Court finds that Plaintiff did not establish a reasonable probability of success in the eventual litigation and did not demonstrate irreparable harm. Under these circumstances, the extraordinary remedy of preliminary injunction is neither appropriate nor equitable.

## II.     PROCEDURAL HISTORY

Plaintiff filed her initial complaint against Defendant Cindy Bass on January 27, 2022. ECF No. 1. Plaintiff subsequently filed an amended complaint adding Defendant City of Philadelphia on March 31, 2022. ECF No. 10. On May 12, 2022, Plaintiff filed the instant Motion for Preliminary Injunction. ECF No. 15.[1] Plaintiff seeks to return to her role as primary contact person for the 22nd Ward Committee RCO and protection against any subsequent attempts to remove her by either Defendant. *Id*. at 14.

The parties submitted Joint Undisputed Facts with a Joint Exhibit List in anticipation of a hearing on the Motion for Preliminary Injunction. ECF No. 30. On September 13, 2022, this Court held a Preliminary Injunction Hearing. At the hearing, the Court heard testimony from five

---

[1] Prior to Plaintiff's Motion, Defendants filed a Joint 12(b)(6) Motion (ECF No. 13) which was later denied (ECF No. 19). Following the resolution of the 12(b)(6) Motion, Defendants each filed answer to the amended complaint (ECF Nos. 25-26).

witnesses: Defendant Cindy Bass, Plaintiff Carla Cain, Jonathan Goins (PCPC RCO Coordinator), Eleanor Sharpe (Executive Director of the PCPC), and Christine Foster (current primary contact for the RCO). ECF No. 33. Following the hearing, the parties individually filed Proposed Findings of Fact and Conclusions of Law with supporting briefs on the issue of whether the Court should grant a Preliminary Injunction. ECF Nos. 35, 38. Plaintiff subsequently filed a motion for leave to amend/correct the Motion for Preliminary Injunction (ECF No. 41), seeking to add a procedural due process claim. This motion was granted on November 22, 2022. ECF No. 44.

### III.    FINDINGS OF FACT

1. Ms. Cain is a resident of the City of Philadelphia, an elected local Democratic committeeperson for the 22nd Ward, 25th Division, serving as the First-Vice Chair for the 22nd Ward, and a member of the Pennsylvania Democratic State Committee. ECF No. 30 ¶ 2.

2. Ms. Bass is councilperson for the Eighth District of the City of Philadelphia and is the elected ward leader for the 22nd Democratic Ward Committee ("the Ward Committee"). *Id.* ¶ 3.

3. In 2018, Ms. Bass and Ms. Cain were both candidates in the election for ward leader of the Ward Committee. ECF No. 33 25:1-8.

4. Ms. Bass won the election, and, since then, Ms. Cain has publicly criticized and disagreed with Ms. Bass. *Id.* 24:1-6.

5. Ms. Cain's political opposition has taken the form of 1) voicing the opinion that Ms. Bass has violated various rules and by-laws of the Ward Committee as established by the Democratic Party in the City, 2) attempting to compel Ms. Bass to reveal her campaign contributions, 3) questioning Ms. Bass's transparency when dealing with other political

candidates and organizations, and 4) withholding support for Ms. Bass's candidacy for ward leader. ECF No. 30 ¶ 5.

6. The PCPC is a City of Philadelphia agency that oversees land use and development in Philadelphia. *See* Phila. Code § 14-105

### A. RCO Recognition and Registration

7. The Philadelphia Zoning Code (the "Code") provides that an organization seeking recognition as a Registered Community Organization ("RCO") must register with the PCPC. Phila. Code § 14-303(11A).

8. Three categories of organizations can register: (1) a volunteer organization, a Pennsylvania nonprofit corporation, an unincorporated association; (2) a Pennsylvania municipal authority that either serves as a Neighborhood Improvement District Management Association or is itself a Special Services District; (3) or a political committee that represents the members of a political party within a ward. *Id*. § 14-303(11A)(a)(.1).

9. The registration requires primary contact information. *Id*. § 14-303(11A)(b)(.2); (g) (authorizing PCPC to make regulations regarding RCOs); PCPC Regs., 12.3.5.2 (Nov. 2016) (requiring the "name of the organization's primary contact person"); PCPC Regs., 12.3.2.2.2 (Nov. 2019) (same); PCPC Regs., 12.3.2.2.2 (Nov. 2021) (same).

10. There is a one-month RCO registration period in June every year, and registration is good for two years before it must be renewed. PCPC Regs. 12.3.2, 12.3.3 (Nov. 2016); PCPC Regs., 12.3.1.1, 12.3.1.2 (Nov. 2019); PCPC Regs., 12.3.1.1, 12.3.1.2 (Nov. 2021).

11. Under the PCPC Regulations (the "Regulations"), an organization may change its registration information at any time and the PCPC Executive Director may require "any additional application materials deemed necessary." PCPC Regs., 12.3.5.9, 12.3.8 (Nov.

4

2016); PCPC Regs., 12.3.2.2.10, 12.3.4 (Nov. 2019); PCPC Regs., 12.3.2.2.10, 12.3.4 (Nov. 2021).

12. In June of 2019 the City maintained a "Registered Community Organization Application: 2019." *See* Joint Exhibit 1.

13. In June of 2021 the City maintained an electronic form by which an application to renew an RCO registration could be submitted. *See* Joint Exhibit 4.

14. Presently, there are approximately 260 RCOs serving communities throughout the city. ECF No. 30 ¶ 6.

15. The City ordinance governing registered community organizations has been the same at all times relevant hereto. *See* Joint Exhibit 8.

16. Regulations of the PCPC have been amended over the past few years, and include three versions effective June 27, 2016, November 18, 2019, and November 22, 2021. *See* Joint Exhibits 9, 10 and 11.

    **B.  Ms. Cain's Initial RCO Application**

17. Ms. Cain submitted an RCO application on June 15, 2019. *See* Joint Exhibit 2.

18. The application identified the Ward Committee as the organization being registered, identified the type of organization as ward committee, and included confirmation that the "RCO is a Political Ward." *Id*.

19. Ms. Cain included her contact information for the primary contact. *Id*.

20. The PCPC accepted the application. ECF No. 33 104:8-18.

21. Ms. Cain did not seek authorization from the ward leader, Ms. Bass, or the committee before she submitted the application. *See Id*. 68:13-19; ECF No. 30 ¶ 19.

22. Ms. Bass became aware of this application on behalf of the Ward Committee in 2019, sometime after the registration was complete. ECF No. 33 28:10-15.

### C.  2nd RCO Application

23. Ms. Bass asked Christine Foster and Dominic Mathis if they would serve as contacts for the RCO function of the Ward Committee, and they accepted. *Id*. 28:18-29:1.

24. On August 13, 2020, an RCO application was submitted on behalf of the Ward Committee, naming Christine Foster and Dominic Mathis as contacts. *See* Joint Exhibit 3.

25. The application included a ward leader certification signed by the ward leader, Ms. Bass. *Id*.

26. Because the 2019 application had not yet expired, and there could not be more than one RCO under the same political ward, the PCPC treated the application as a request to change primary contact information for the RCO. ECF No. 33 35:11- 36:24.

27. On August 20, 2020, PCPC emailed Ms. Cain to confirm if she was aware of the recently submitted application with new contact information and ward leader certification. *Id*. 79:3-80:1; Joint Exhibit 12 at 25.

28. On September 2, 2020, PCPC followed up with Ms. Cain, writing that because she failed to respond, they would be "moving forward with the changes to organization name and primacy contacts as requested in the newly submitted registration." ECF No. 33 80:2-12; Joint Exhibit 12 at 24.

29. Ms. Cain responded the same day, asking to discuss, and PCPC responded as follows to explain their procedure: "When we receive requests to change RCO info from someone other than the primary contact, we reach out to the primacy contact to confirm. If the primary contact doesn't respond or contests the request for changes, we'll reach out to

organizational leadership (in this case the ward leader) for confirmation. We're taking the ward leader's signature on the recently submitted registration as a confirmation of the request to change information in this case." ECF No. 33 93:1-94:1; Joint Exhibit 12 at 23.

30. Ms. Cain contested the change, and was not removed as primary contact in 2020, as the PCPC continued its deliberation on how best to handle the dispute. ECF No. 33 107:12-25.

### D.  Ms. Cain's RCO Renewal Application

31. On June 3, 2021, Ms. Cain submitted a renewal application for the 22nd Ward Democratic RCO. *See* Joint Exhibit 5.

32. In the application, Ms. Cain certified that she was "applying for RCO status on behalf of a political ward, and that the ward committee and ward leader are aware and have authorized this application for RCO status." ECF No. 33 91:21-92:16; Joint Exhibit 5.

33. At the time Ms. Cain made this certification, she was aware that the ward leader, Ms. Bass, contested her role as primary contact. ECF No. 33 90:1-8, 16-20; 92:9-16.

### E.  Ms. Cain's Removal as Primary Contact

34. Between Sept. 16, 2019, and Oct. 13, 2021, Ms. Bass made multiple communications to the PCPC requesting that Ms. Cain be removed as primary contact of the RCO, including by communications made through Ms. Bass's council staff members. ECF No. 30 ¶ 13.

35. On September 24, 2021, the PCPC alerted participants for a particular zoning matter by email that the primary contact for the 22nd Ward Democratic Committee RCO had been updated from Ms. Cain to Christine Foster. Joint Exhibit 12 at 120-21.

36. Ms. Cain contested this, and the PCPC subsequently notified her that she would "remain the primary RCO for the 22nd Ward Democratic Committee," while they continued to attempt to resolve the dispute. *Id*. at 119-20.

37. On September 27, 2021, Jonathan Goins contacted Eleanor Sharpe regarding the Ward Committee issue, noting that "council office does not have the authority to change the contact information for an RCO" and that a PCPC "process" would be required. *Id.* at 17.

38. On September 28, 2021, Jonathan Goins contacted Ms. Bass, noting that the PCPC did not have "any set procedure in place for when there's a disagreement about primary contacts for RCOs," and suggesting that a written request from the ward leader should be "sufficient to make the change." He further noted that the PCPC was "trying to be consistent in how we handle this across all RCOs." *Id.* at 89.

39. When no ordinance or regulation specifically determines PCPC conduct, existing standard practice is guiding. ECF No. 33 151:14-24.

40. On October 13, 2021, Ms. Bass, in her capacity as ward leader, submitted a written request to Eleanor Sharpe, requesting that Christine Foster be listed as the primary contact for the RCO. *See* Joint Exhibit 6.

41. Sometime between September 27, 2021, and November 3, 2021, at Ms. Bass's request, Ms. Cain was replaced as primary contact for the RCO with Christine Foster. *See* Joint Exhibit 7.

42. On or around this same time, Ms. Cain was informed that she was no longer the primary contact of the RCO. ECF No. 33 87:6-12.

### F.  PCPC Practice

43. Representatives from the Planning Commission testified that, under their regulations and policies, councilmembers do not have the authority to choose primary contacts for RCOs. *Id.* 132:21-24.

44. Those representatives also testified that in the event of a dispute regarding the primary contact of a ward committee RCO, their practice is to defer to the ward leader. *Id*. 111:12-112:10, 132:21-133:10.

45. The PCPC did not deviate from that practice here—when Ms. Bass disputed Ms. Cain's RCO registration, the PCPC requested that she, as elected ward leader of the Ward Committee, confirm her choice of primary contact in writing. *Id*. 116:10-18.

46. Virtually all information regarding zoning matters within the City is made publicly available. *Id*. 135:8-25, 136:1-8.

47. Philadelphia zoning board hearings are open to the public for participation and comment. *Id*. 136:9-25.

48. Neither Ms. Bass nor the City prevented Ms. Cain from attending meetings of any RCO. *Id*. 136:15-17.

49. Three other active RCOs[2] were and are operating within the bounds of the 22nd political ward. *Id*. 59:19-60:12.

50. Neither Ms. Bass nor the City prevented Ms. Cain from attending public zoning board hearings. *Id*. 98:12-14.

51. Neither Ms. Bass nor the City prevented Ms. Cain from accessing publicly available information regarding zoning and development within bounds of the 22nd political ward. *Id*. 135:21-136:25.

52. Neither Ms. Bass nor the City prevented Ms. Cain from starting a non-profit or unincorporated association for the purpose of registering and running an RCO. *Id*. 71:23-72:1, 98:18-20.

---

[2] East Mount Airy, West Mount Airy, and Cliveden Hills

## IV.   STANDARD OF REVIEW

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 197 (3d Cir, 2014) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). Preliminary injunctive relief "should be granted only in limited circumstances." *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merk Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002) (quoting *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3d Cir. 1989)).

Preliminary injunction requires that the plaintiff demonstrate "(1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured … if relief is not granted …." *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017). These two "gateway factors" must be met by the movant for the Court to consider injunctive relief. *Id*. at 179; *see also Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 197 (3d Cir. 1990) (finding that preliminary injunction cannot be sustained "where either or both of these prerequisites are absent").[3]

For the first gateway factor, reasonable probability of eventual success in litigation, a movant "must demonstrate that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not)." *Reilly*, 858 F.3d at 179. To show the second gateway factor, irreparable injury absent relief, a movant must "produce affirmative evidence indicating that he or she will be irreparably harmed should that relief be denied." *Marxe v. Jackson*, 833 F.2d 1121, 1127 (3d Cir. 1987). A demonstration of irreparable harm requires that the movant show "harm which cannot be redressed by a legal or an equitable remedy following

---

[3] If the threshold factors are met, the Court then considers, when they are relevant, "(3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest." *Reilly*, 858 F.3d at 176. "All four factors should favor preliminary relief before the injunction will issue." *S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 374 (3d Cir. 1992).

trial" such that preliminary injunction is "the only way of protecting the plaintiff from harm." *Instant Air Freight Co.* 882 F.2d at 801. The injury must be "actual and of serious consequence, not merely theoretical." *A.L.K. Corp. v. Columbia Pictures Industries, Inc.*, 440 F.2d 761, 764 (3d Cir. 1971). In situations where injunctive relief "will alter the status quo, the party seeking the injunction must meet a higher standard of showing irreparable harm in the absence of an injunction." *Bennington Foods LLC v. St. Croix Renaissance, Group, LLP*, 528 F.3d 176, 179 (3d Cir. 2008).

## V.    DISCUSSION

Since Plaintiff fails to show a reasonable probability of eventual success in litigation and fails to prove irreparable harm, the Court denies the Motion for Preliminary Injunction.

### A.  Reasonable Probability of Eventual Success in the Litigation

#### i.   Unlawful Retaliation in Violation of First Amendment Rights

Section 1983 provides a private cause of action for the violation of a federal constitutional right.[4] This statutory provision does not create substantive rights. *Maher v. Gagne*, 448 U.S. 122, 129 n. 11 (1980). To prevail on a §1983 claim, a plaintiff must establish that the defendant deprived the plaintiff of a right secured by the United States Constitution while acting under color of state law.[5] *See Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). A plaintiff cannot prevail in an action brought under §1983 without establishing an underlying violation of a federal

---

[4] "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress..." 42 U.S.C. § 1983

[5] Defendants argue that Plaintiff fails to provide evidence of a City policy or practice sufficient to establish either necessary state action or *Monell* liability. *See* ECF No. 36 at 14-18. The Court declines to address this argument at this point in the proceedings, as the evidentiary record demonstrates the absence of other requisite elements for all claims. Because a deficiency of evidence of required elements is sufficient to deny Plaintiff's Motion for Preliminary Injunction, the Court need not evaluate these arguments.

constitutional or statutory right. *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 119-120 (2005). The initial step in the Court's analysis of a §1983 claim is to "identify the exact contours of the underlying right said to have been violated." *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5 (1998). In the instant case, Plaintiff's constitutional claims appear to be based on the Free Speech and Peaceable Assembly Clauses of the First Amendment.[6] ECF No. 43 ¶¶ 69-79.

To establish a First Amendment retaliation claim pursuant to §1983, a plaintiff must demonstrate three elements: "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Hammond v. City of Wilkes Barre*, 628 Fed. Appx. 806, 807-808 (3d Cir. 2015) (quoting *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006)). To establish the requisite causal connection, a plaintiff must prove either "(1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). Absent such proof, "the plaintiff must show that from the evidence gleaned from the record as a whole the trier of fact should infer causation. *Id*. (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)).

The Court finds that Plaintiff has not shown reasonable probability of success in the eventual litigation on her unlawful retaliation claims. The record does not support that Ms. Cain's removal as primary contact for the RCO qualifies as retaliatory action, nor does it demonstrate that removal prevented the exercise of her constitutional rights. The Court recognizes the standing political rivalry between Ms. Cain and Ms. Bass. But a standing political rivalry, wherein one party

---

[6] These provisions apply to the States because of their incorporation within the Due Process Clause of the Fourteenth Amendment. *Meyer v. Grant*, 486 U.S. 414, 420 (1988).

is elected to a position of authority over the other, does not impute a retaliatory motive onto any action taken by one party to the detriment of the other. Here, Ms. Cain acknowledges that she at no point consulted the Ward Committee or its leadership before applying for recognition as an RCO on the organization's behalf. When Ms. Bass eventually discovered that the Ward Committee had been registered as an RCO, she acted in her capacity as ward leader to replace its unauthorized primary contact (Ms. Cain) with someone approved by the Ward Committee (Ms. Foster). Ms. Bass's position as councilperson does not render all actions she takes as ward leader retaliatory, nor does it create a causal link between Ms. Cain's removal and her political rivalry with Ms. Bass. Based on the evidence before the Court, Ms. Cain fails to establish the requisite elements of a First Amendment retaliation claim and has cannot show a reasonable probability of eventual success in litigation.

### ii.   Retaliatory Removal from Official Position[7]

The Fourteenth Amendment states that "no State shall … deny to any person within its jurisdiction the equal protection of the laws. According to Section 1983, a plaintiff must prove "the existence of purposeful discrimination" to claim denial of equal protection. *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987). While equal protection claims are typically "concerned with governmental classifications that affect some groups of citizens differently than others," they may also be brought by individuals as a "class of one." *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 601 (2008). "[U]nder a class of one theory, a plaintiff must show that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Spiker v. Whittaker*, 553 Fed. Appx. 275,

---

[7] The First Amendment portion of Plaintiff's claim is subject to the same legal standard for unlawful retaliation described *supra*. This section will address the Fourteenth Amendment portion of Plaintiff's claim.

280 (3d Cir. 2014) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008)) (citations omitted).

The Court finds that Plaintiff has not shown reasonable probability of success in the eventual litigation on her retaliatory removal claims. The record does not support that Ms. Cain's removal as primary contact for the RCO qualifies as retaliatory action by the City. Though no controlling regulation or written procedure existed to determine PCPC's response to an interorganizational disagreement about the primary contact for an RCO, the PCPC followed standard office practice of deference to organization leadership. The PCPC additionally took steps to ensure that Ms. Cain was not removed as primary contact until they had conducted a thorough investigation of the situation. Based on the evidence before the Court, the record does not support an inference of a causal link between the City's alleged deference to Ms. Bass as councilperson and Ms. Cain's replacement as primary contact for the RCO.

In addition, Plaintiff does not elaborate on her Fourteenth Amendment claims, in either the Second Amended Complaint or the brief in support of the Motion for Preliminary Injunction, beyond stating that the City's failure to reinstate her as primary contact person for the RCO violates her "Fourteenth Amendment right to equal protection of laws." *See* ECF No. 15-1 at 9; ECF No. 43 ¶ 85. The record does not support that Ms. Cain suffered purposeful discrimination, neither under a group classification theory nor a class-of-one theory. Ms. Cain was not treated differently than other citizens in a similar situation. In fact, the record reflects that in resolving the situation, the PCPC aimed to ensure that all RCOs were handled in a consistent manner. The PCPC also expressed, both in the application for the primary contact and their testimony in Court, a clear rational basis in wanting the primary contact for a ward committee RCO to be known and approved

by ward leadership. Based on the evidence before the Court, Ms. Cain fails to show the requisite elements of this claim and fails to show a reasonable probability of eventual success in litigation.

    iii.   <u>Removal from Official Position Without Fourteenth Amendment Procedural Due Process</u>

Through a procedural due process claim, plaintiff alleges that they have suffered a deprivation of a constitutionally protected liberty or property interest, and that the deprivation took place without the benefit of constitutionally mandated procedures. *See Metzger v. Osbeck*, 841 F.2d 518 (3d Cir. 1988). A plaintiff must demonstrate three elements: (1) that defendant deprived plaintiff of an interest protected by law, (2) that the deprivation was the result of some governmental action[8], and (3) that the deprivation was without due process. *See Cospito v. Heckler*, 742 F.2d 72, 80 (3d Cir. 1984). The "range of interests protected by procedural due process is not infinite." *Bd. of Regents v. Roth*, 408 U.S. 564, 556, 92 S. Ct. 2701 (1972). "[T]he deprivation by state action of a constitutionally protected interest … is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (citing *Parratt v. Taylor*, 451 U.S. 527, 537); *Carey v. Piphus*, 435 U.S. 247, 259 (1978) ("Procedural due process rules are meant to protect persons not from the deprivation"). Liberty interests are not "define[d] with exactness," but are specifically noted to include "freedom from bodily restraint" and other fundamental rights.[9] *Roth*, 408 U.S. at 572.

When determining "whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate." *Zinermon*, 494 U.S. at 126. "To determine what procedural protections the Constitution requires in a particular

---

[8] See Note 4 *supra*.

[9] Including "the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men." *Roth*, 408 U.S. at 572.

case," the Court weighs several factors: (1) the private interest affected, (2) the risk of erroneous deprivation, (3) the value of additional safeguards, and (4) the government interest. *Id*. at 127 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

Here, similarly, the Court finds that Plaintiff does not show reasonable probability of success in the eventual litigation on her procedural due process claim. The record does not support that Ms. Cain's removal as primary contact for the RCO was a deprivation of a protected liberty. Plaintiff refers to the role of primary contact as one of "public office" in attempting to make a case for deprivation. *See e.g.* ECF No. 15-1 at 10. This characterization is erroneous, however, as the Ward Committee is a private organization and designation as primary contact affords neither compensation nor authority. Furthermore, the relevant portions of the Philadelphia Code (Phila. Code § 14-303) and the PCPC Regulations (PCPC Regs. 12.3) do not create or confer any individual rights to the primary contact, instead investing due process rights exclusively in organizations.

Even if Plaintiff established a protected interest, which she does not, the PCPC's removal of Ms. Cain as primary contact of the RCO was conducted appropriately. The Ward Committee initially requested that the City change the primary contact in 2020. The City notified Ms. Cain of the change request (per PCPC regulations) and acknowledged her objection. The City then deferred making any change while it investigated the matter. When the City completed their investigation, which included contacting the Ward Committee and receiving written instruction from the ward leader, they notified Ms. Cain of her removal citing their practice of deferring to organization leadership regarding RCO primary contacts. The record as a whole indicates that the City provided ample process in its review of the Ward Committee's change request, by conferring with both Ms. Cain and Ms. Bass and implementing the change a year later, after an investigation

and per their protocol. No amount of additional process would change the facts that (1) the Ward Committee, pursuant to PCPC regulations and as demonstrated by its elected leadership, is entitled to appoint the primary contact for its RCO, and (2) that Ms. Cain was at no point authorized by the Ward Committee leadership to occupy that role. Accordingly, Ms. Cain does not show a reasonable probability of eventual success in litigation.

### B.  Irreparable Injury

Irreparable injury is an imminent risk "that the plaintiff will suffer harm that cannot be redressed by a legal or an equitable remedy following a trial." *Hynoski v. Columbia County Redevelopment Auth.*, 485 Fed.Appx. 559, 563 (3d Cir. 2012) (citing *Instant Air Freight Co.*, 882 F.2d at 801). In evaluating the presence of irreparable harm, "the purpose of a preliminary injunction is to preserve the status quo," pending determination on the merits. *Anderson v. Davila*, 125 F.3d 148, 156 (3d Cir. 1997). "[W]here the relief ordered by the preliminary injunction is mandatory and will alter the status quo, the party seeking the injunction must meet a higher standard of showing irreparable harm in the absence of an injunction." *Bennington*, 528 F.3d at 179.

Here, the record does not support any finding of irreparable harm. Ms. Cain's removal from the role of primary contact for the RCO does not prohibit her from participating in the Philadelphia land development process. Neither Ms. Bass nor the City have taken any action to prevent Ms. Cain from participating in any of the other RCOs operating in the 22nd Ward or taking measures to form a non-ward committee organization and register it as an RCO. Additionally, nothing prevents Ms. Cain from accessing publicly available zoning and development information or attending public zoning board hearings. No evidence indicates that Ms. Cain's access to local zoning or land development information is impeded due to the change to the RCO's primary

contact. All public forums and all publicly available information on the subject remain open to her. Moreover, the injunctive relief that Ms. Cain seeks is of a mandatory and not prohibitory character. For the Court to grant the requested relief would be to alter the status quo by ordering a positive act – removing Christine Foster as primary contact against the preference of the organization and installing Ms. Cain. The standard for such relief is high and Ms. Cain fails to meet it.

## VI.    CONCLUSION

"All four factors should favor preliminary relief before the injunction will issue." *Alliance Bank v. New Century Bank*, 742 F. Supp 2d 532, 545 (E.D. Pa. 2010) (quoting *S & R Corp.*, 968 F.2d at 374). Because the Court has concluded that Plaintiff has failed to satisfy the two gateway factors, the Court need not evaluate the other factors.

For the foregoing reasons, the Court denies Plaintiff's Motion for a Preliminary Injunction. An appropriate Order to follow.

BY THE COURT:

/s/ Chad F. Kenney

_____

CHAD F. KENNEY, JUDGE